JAMES ROBB & others *vs.* ENOCH R. MUDGE & another.
JOHN AYMAR & another *vs.* SAME.
FRANCIS E. PARKER *vs.* SAME.

A *bona fide* transfer of partnership property to one partner by indenture, in consideration of his assuming the partnership debts, makes it his separate property, and not liable in insolvency to creditors of the partnership, who have not agreed to accept him individually as their debtor, until his separate creditors are paid.

A bill of exchange drawn by a partnership and sent to an agent for sale, but sold after notice to the agent and the purchaser that one partner has retired, binds the remaining partner only.

APPEALS from decrees of the court of insolvency for the county of Norfolk, in the matter of the estate of Enoch Train. The cases were submitted to the decision of this court upon the following facts:

Enoch Train and Frederick W. Thayer, prior to the 31st of December 1856, carried on business in Boston under the firm of Enoch Train & Company, and were also partners in Liverpool with George Warren and John A. Marsh, who resided there, under the firm of Train & Company. Both firms expired by limitation on the 31st of December 1856; and the members thereof on that day executed an indenture containing these stipulations:

" First. That said Thayer shall, and he hereby does, assign and convey to said Train all his interest in all the assets and property of the firm of Enoch Train & Company of said Boston; and covenants by apt conveyances or such future assurances as may be necessary to convey to said Train a complete title thereto.

" Second. In consideration of which said Train has agreed, and hereby agrees, with said Thayer, to assume and pay all the debts and liabilities of said Enoch Train & Company, and Train & Company, and to indemnify and save harmless said Thayer therefrom."

Under this agreement all the property of the firm of Enoch Train & Company, amounting to about $300,000, was transferred to Train. Train & Company had no property. The dissolution of partnership was announced in the Boston papers

of January 1st 1857. Train continued the business alone under the name of Enoch Train & Company. He suspended payment on the 18th of February 1857, and on the 2d of May a warrant of insolvency issued against his estate, and the defendants in these suits were subsequently chosen his assignees, but no proceedings in insolvency were instituted against either of the former firms. Train had a large individual estate besides that conveyed to him as above stated.

The *first* claim was upon bills of exchange to the amount of £10,000 sterling, drawn by Enoch Train & Company upon Train & Company of Liverpool on the 27th of December 1856, and according to their usual custom ; and sent the same day by Enoch Train & Company to De Launay, Iselin & Clarke, exchange brokers in New York, for sale ; and which were not drawn against funds in the hands of the latter, but to be met by Enoch Train & Company. Previously to the 31st of December said brokers sold £4500 of the above bills to Robb, Hallett & Company, of New York, and received the proceeds thereof, and on the 7th of January 1857 deposited the same to the account of Train, by whom they were subsequently received and used. On the 5th of January 1857 said brokers, with notice of the dissolution of the firm of Enoch Train & Company, sold the remaining bills to Robb, Hallett & Company, who had the like notice, and were informed that they acted merely as agents of Enoch Train & Company ; and afterwards deposited the proceeds as above, and the same were received and used by Train. On the same day Train, in the name of Enoch Train & Company, wrote, directing the sale of these bills, but the letter was not received until after the sale thereof. These bills were duly accepted by Train & Company of Liverpool, and afterwards protested for non-payment.

The *second* claim was for the amount of similar bills of exchange of £4000, purchased in December 1856 from Train & Company's agents in New York by Aymar & Company, who had notice of the dissolution of partnership, who sought to prove the amount paid by them therefor ; because Train, after the 1st of January 1857, had received the same ; and also

because Train, by the indenture of dissolution, had assumed and promised to pay it as his individual debt.

The *third* claim was by the assignee in insolvency of William Dwight, Jr., on a debt on an account due from Enoch Train & Company to Dwight, before the dissolution of the firm.

These cases were argued at November term 1858 in Norfolk, by *B. F. Brooks & J. D. Ball,* for Robb, Hallett & Company, *R. Choate & H. F. Durant,* for Aymar & Company, and *C. Cushing & T. K. Lothrop,* for Parker, upon the following grounds:

Train, by the conveyance of the partnership property to him, and his promise to pay the partnership debts, assumed and became liable at law to pay those debts, and his estate is therefore chargeable, either upon the bills of exchange, or for their amount received by him, without showing the creditor's assent to the transfer. *Arnold* v. *Lyman,* 17 Mass. 400. *Sanders* v. *Filley,* 12 Pick. 554. *Carnegie* v. *Morrison,* 2 Met. 402. *Fitch* v. *Chandler,* 4 Cush. 254. *Brewer* v. *Dyer,* 7 Cush. 337. *Mellen* v. *Whipple,* 1 Gray, 317, 322. *Millard* v. *Baldwin,* 3 Gray, 484. *Field* v. *Crawford,* 6 Gray, 116. *Borden* v. *Cuyler,* 10 Cush. 476. *Ellwood* v. *Monk,* 5 Wend. 235. *Huckabee* v. *May,* 14 Alab. 263. *Hoyt* v. *Murphy,* 18 Alab. 316. *Peacey* v. *Peacey,* 27 Alab. 683. Story Partn. § 369.

If not liable at law, Train would have been liable in equity; and equitable as well as legal claims may be proved in insolvency. *St.* 1838, *c.* 163, § 3. *Sts.* 1 Jac. 1, *c.* 15, § 4; 7 G. 1, *c.* 31, § 1; 5 G. 2, *c.* 30, § 25; 19 Geo. 2, *c.* 22, § 2; 16 G. 4, *c.* 16, § 46. Eden B. L. 138. 1 Mont. & Ayrt. on Bankr. (2d ed.) 229. *Ex parte Dewdney,* 15 Ves. 495–498. *Ex parte Williamson,* 2 Ves. Sen. 249. *Ex parte Yonge,* 3 Ves. & B. 40. *Gregory* v. *Williams,* 3 Meriv. 582. *Tomlinson* v. *Gill,* Ambl. 30. *Barford* v. *Stuckey,* 5 Moore, 23. *Colt* v. *Wilder,* 1 Edw Ch. 484. *Bleeker* v. *Bingham,* 3 Paige, 249. *Sedam* v. *Williams,* 4 McLean, 51.

The purpose of the insolvent law is to give to a creditor recourse to that fund or property, upon the credit of which the debt was contracted. *Trowbridge* v. *Cushman,* 24 Pick. 310

*Fall River Whaling Co.* v. *Borden*, 10 Cush. 458.  *Agawam Bank* v. *Morris*, 4 Cush. 99.

The dissolution of the partnership terminated the power of the brokers to bind it, at least to those having notice of the dis solution.  Chit. Bills (10th Amer. ed.) 51, 52.  *Sanford* v. *Mickles* 4 Johns. 224.  *National Bank* v. *Norton*, 1 Hill, (N. Y.) 572 *Lusk* v. *Smith*, 8 Barb. 578.  *Woodford* v. *Dorwin*, 3 Verm. 82 *Bank of South Carolina* v. *Humphreys*, 1 McCord, 388.  *Usher* v. *Dauncey*, 4 Campb. 97.  *Newsome* v. *Coles*, 2 Campb. 617 *Kilgour* v. *Finlyson*, 1 H. Bl. 155.  *Abel* v. *Sutton*, 3 Esp. R. 108.  *Wrightson* v. *Pullan*, 1 Stark. R. 375, and 2 Chit. R. 121. *Parker* v. *Macomber*, 18 Pick. 505.  3 Kent Com. (6th ed.) 63. The subsequent negotiation of bills to Robb, Hallett & Company could only bind Train individually.  *Ex parte Liddiard*, 2 Mont. & Ayrt. 87, and 4 Dea. & Chit. 603.  *Tombeckee Bank* v. *Dumell*, 5 Mason, 56.

*S. Bartlett & D. Thaxter*, for the assignees of Train.

BIGELOW, J.  The creditors in these cases, having debts which were due to them from the firm of Enoch Train & Company at the time of the dissolution of that copartnership, seek to prove the whole or a portion of their claims against the private estate of Train.  There can be no doubt that, by the agreement of dissolution, made on the 31st of December 1856, the joint estate of the firm was converted into the private estate of Train, so that it can be applied only in payment of debts which are provable against his estate.  The sale and assignment of the property and assets of the firm by the retiring partner were made in good faith; and they cannot now, in marshalling the assets in insolvency, be treated as joint estate, or applied to the payment of the joint debts.  This point was adjudicated on full and careful consideration in *Howe* v. *Lawrence*, 9 Cush. 553, and we see no occasion to change or revise the opinion therein expressed.

The main ground on which the creditors rest their claims to make proof against the private estate of Train is, that by the agreement for the dissolution of the firm, it was stipulated by Train that he would " assume and pay all the debts and liabilities of Enoch Train & Company," and indemnify and save

harmless his retiring partner therefrom. But it seems to us that this stipulation gives the creditors of the firm no right to treat Train as their separate debtor, or to seek an appropriation of his separate estate in insolvency to the payment of their debts. At the time of the institution of the proceedings in insolvency, Train was not indebted to them individually. They had no claim against him, on which he would have been liable to a separate action. They do not bring their claims within the principle recognized in the adjudged cases relating to promises made by simple contract for a valuable consideration by one person with another to do an act or pay money for the benefit of a third. The agreement to pay the debts of the firm by Train was not by a simple contract; it was by a covenant. The indenture of dissolution, in which it is contained, is under seal. The authorities are uniform in holding that no such promise is available to a third party, unless it be by an agreement in the form of a simple contract. *Mellen* v. *Whipple,* 1 Gray, 317, & cases cited. *Northampton* v. *Elwell,* 4 Gray, 82, & cases cited.

But if it had been otherwise, and the agreement had been by a writing, not under seal, with the retiring partner to pay the debts of the firm, the creditors of the copartnership would not, on the facts agreed in these cases, be thereby authorized to treat Train as their separate debtor, and prove against his private estate. An essential element to the validity of their claims to prove as separate creditors would still be wanting. There is no evidence of any agreement or assent on their part, before the commencement of the insolvent proceedings, to accept Train as their individual debtor. No such assent can be presumed. It is not a case where property has been conveyed in trust for the benefit of a third party, and where no other duty is imposed on the trustee than to administer the property faithfully and pay it over to the party beneficially interested. In such a case very slight, if any, evidence would be necessary to lead to the presumption of assent by the *cestui que trust.* Here no property was conveyed in trust for the benefit of the creditors of the firm. It was an absolute transfer to Train of the copartnership estate and effects for his own sole use and benefit. The property was

clothed with no trust, either for the benefit of Thayer, or of the creditors of the firm. The agreement to pay the debts of the copartnership was a mere personal covenant. So far as the creditors of the firm could be thereby affected, it was the substitution of one member of the copartnership as debtor, who was to pay the debts, instead of the firm. No assent to such an agreement can be presumed. It must be proved by satisfactory evidence. *Wildes* v. *Fessenden*, 4 Met. 12, & cases there cited. It follows that as, when the insolvent proceedings were commenced by Train, there had been no assent by the creditors of the firm to accept him as their debtor in lieu of the copartnership, there is nothing on which to establish the privity of contract, which is essential in order to convert joint into separate debts.

It was suggested that if the joint creditors could not establish a legal claim to prove their debts against the private estate of Train, they might have maintained a bill in equity against him to compel payment of their debts under the stipulations in the agreement for dissolution; and that, having equitable claims against him at the time of the institution of proceedings in insolvency, they might be admitted to prove them against his separate estate; and that if this could not be done in their own names, it might be allowed in the name of the retiring partner. The fallacy of this position consists in assuming that the creditors or Thayer had any such equity. This point was settled in *Howe* v. *Lawrence*, above cited. By the agreement for dissolution, the retiring partner relinquished all lien on the partnership property, and all right in equity to have it applied in payment of the debts of the firm. He took instead thereof the personal covenant of his partner to pay the debts. On this he has an adequate remedy at law. The creditors of the firm had no equity as against the property. Its transfer to the continuing partner in good faith was perfectly valid as to them, and he took it absolutely discharged of any trust. They therefore cannot rest their claim on any equity in themselves or in the outgoing partner. Their remedy for their debts was perfect at law by action against both members of the firm, and they had no claim

of an equitable nature, which could be enforced against the separate estate of Train. Even in England, where proof of equitable as well as legal claims is allowed in bankruptcy, it is well settled that, under an agreement for the dissolution of a firm, containing stipulations similar to those which were made by the copartners in the present case, the joint creditors cannot prove against the separate estate of the continuing partner, to whom the joint property has been transferred, unless, prior to the bankruptcy, the joint creditors have accepted the continuing party as their debtor. *Ex parte Williams*, Buck, 13. *Ex parte Freeman*, Buck, 471. *Ex parte Fry*, 1 Glyn. & J. 96. *Ex parte Appleby*, 2 Dea. 482. Assuming (what we are by no means prepared to admit) that under our insolvent law equitable claims against a debtor may be proved against his estate in insolvency, it is very clear that the creditors in the present case fail to establish any right to make proof on the ground that they are entitled to assert an equity against the continuing copartner or his assets in the hands of the assignees.

So far as the claim of Robb, Hallett & Company to prove against the separate estate of Train is founded on bills of exchange which were negotiated after the dissolution of the firm, we are of opinion that they should be allowed. The dissolution of the firm revoked the authority of the agent to sell the drafts. Chit. Bills, 51, 52. The outgoing partner could not be held liable thereon to any one who took them with notice of the dissolution. It is admitted that the agent had notice of the dissolution, and that the holders of the drafts knew, when they took them, that Thayer had retired from the firm. Nor does it appear that there was any agreement that these drafts should be negotiated after the firm was dissolved, or that they were included in the liabilities of the firm when the agreement for dissolution was entered into. But Train is clearly liable thereon. He expressly authorized their negotiation by his letter of January 5th 1857, and ratified it by receiving the proceeds of the bills from his agents afterwards.

*Claims disallowed, except of Robb, Hallett & Co. in part.*