WALSH *vs.* KELLY, Sheriff &c.

A transfer of goods by one who is indebted or insolvent, or, whether indebted or insolvent or not, with the premeditated design and intent to defraud some creditor of his and deprive him of the ability to collect his debt, may be made under such circumstances that if the goods be followed the law will regard it as an actual fraud, between him and his vendee.

The vendee's knowledge of facts and circumstances tending to prove a fraudulent motive on the part of the vendor need not be sought for or inferred from obscure or doubtful indications, where there was an express agreement between them. And a request to submit an inquiry to the jury as to fraud arising out of facts and circumstances only, is, in such a case, immaterial; and if the judge refuses to submit the question, under such circumstances, an exception to his refusal is not well taken. If such a motive existed it will implicate the purchaser as well as the vendor.

There is no ground for charging the purchaser with notice of a fraudulent intent on the part of the vendor, from facts and circumstances merely, when it is plain that if there was any such intent the purchaser was art and part in it.

A firm composed of three members has no right to apply the partnership property to the payment of the debts of two of its members. If it is so transferred it is subject to seizure under attachments issued at the suit of creditors of the firm.

The knowledge that a firm is in failing circumstances will not *per se* render it unlawful for a creditor to receive a transfer of goods from the failing firm in satisfaction of a demand.

It is proper for a judge to charge a proposition based on facts which are questions in the cause, for the jury to determine.

THIS case came up on appeal from a judgment entered in an action brought against the defendant as sheriff, for taking and detaining goods of the plaintiff of the value of $3000. The cause was tried before Mr. Justice MARVIN and a jury, at the June circuit, in New York, 1862. The jury rendered a verdict in favor of the plaintiff, valuing the property at $2750, and awarding damages in addition, to the amount of $401, besides costs. No application was made at special term to set aside the verdict, but an appeal was taken directly from the judgment to the general term. On the trial the defendant justified the taking as sheriff of the city and county of New York, under divers attachments and executions issued thereon, out of the marine court, by the credit-

ors of Mooney, Manley & Co., a firm shortly before that time
in business in the city of New York, against said firm; and
the allegation was made that the property levied on was that
of the said Mooney, Manley & Co., and not of the plaintiff.
Much evidence was given on both sides, but from the general
bearing of the evidence the following facts appeared, viz:
Prior to 1857 the plaintiff had been a merchant doing busi-
ness in London, under the name of M. Walsh & Co. He
consigned goods to G. & F. Mooney, of New York, to sell for
him on commission. Some evidence was given tending to
show that some of these consignments had been made to suc-
cessors of the last named firm, viz: to Mooney, Manley & Co.
The consignments amounted to over $100,000. In 1857 M.
Walsh & Co. suspended payment, owing to their English
creditors a large amount. After their failure the plaintiff
came out to this country, as he claimed, to look after his con-
signments and to settle them up. He was occupied in this
for a long while, with G. & F. Mooney & Co., and with their
successors, Mooney, Manley & Co. This last firm was com-
posed of the members of the house of G. & F. Mooney and
also of one Manley, who had been a clerk of the last named
firm. This clerk brought in no capital to the new firm, but
it appeared that the stock in trade of G. & F. Mooney,
including some $30,000 in value of the consigned goods,
belonging to the plaintiff, went into the hands of Mooney,
Manley & Co., and composed the capital on which the firm
did their business. After considerable delay in settling their
accounts, the parties, on or about the 22d day of June, 1858,
fixed the balance due to the plaintiff on those consignments
at $12,845.90. To pay this amount notes were given to the
plaintiff by G. & F. Mooney, to the order of Mooney, Man-
ley & Co., and indorsed by them. These notes were unpaid
at maturity, as the plaintiff claimed, because in the mean-
time George Mooney, of the firm of G. & F. Mooney, had
been sued by the English creditors of M. Walsh & Co., as

one of that house, but finally a compromise was effected at 3s. 9d. in the pound, for those debts, and there being no reason for any further delay, in December, 1859, Mooney, Manley & Co., at that time however in a failing condition, transferred a portion of their stock in trade over to the plaintiff in payment of the aforesaid balance found due to them. The plaintiff proved that with these goods and some means of his own, he started a retail business at 863 Broadway, in his own name, conducting it as his own business and on his own account. He bought goods to a large amount, of various mercantile firms in New York, and was apparently in full business when the defendant made his levy on the stock in question. It appeared further, on the part of the plaintiff, that a great part of the goods levied on, were identified as goods purchased by the plaintiff in that business, of different firms in New York, with whom he dealt, and who knew nothing about Mooney, Manley & Co. The defendant showed that the plaintiff's business in London was conducted under the firm of M. Walsh & Co. It was started in 1855 or 1856, and about eight months after it commenced, George Mooney, one of the defendants in the attachment, invested £1000 in the London business. He did not consider himself a partner, but his reason for so placing his money was because he desired thereby to have a favorable influence on M. Walsh & Co.'s house in making consignments to G. & F. Mooney. The former had the use of the money, and the latter the control of the goods consigned to G. & F. Mooney by M. Walsh & Co.

There were a number of exceptions taken to rulings on questions of evidence, on the trial, which are noticed in the opinion. The counsel for the defendant then made divers requests to charge to the judge, which are noticed in the opinion. The judge delivered his charge, the material parts of which are noticed in the opinion, and refused to charge any further on the proposition submitted, or other than he had charged. At the close of the charge the appellant's

counsel simply excepted to the refusal of the court to charge any further on the proposition submitted, and also excepted to the charge as made by the court, and to each and every part thereof. The jury found, as before stated, and in perfecting judgment the plaintiff entered it merely for the amount of the verdict, calling the same damages.

*A. J. Vanderpool,* for the appellant.

*D. McMahon,* for the respondent.

*By the Court,* LEONARD, J. The principal questions argued before us in this case require an examination whether the judge at the trial has fully and sufficiently presented to the jury in his charge certain abstract propositions of law to which his attention was called by several requests of the counsel for the defendant.

An exception was taken to the charge in response to the second and third requests. Those requests contained substantially the propositions: First. That the transfer of property to hinder, delay or defraud the creditors of the person making the transfer, was fraudulent and void, even if made upon the consideration of an honest debt, provided the transferee had notice of the fraudulent acts of the person making the transfer; and Second. That notice of such facts as would lead a prudent person to inquire into the motives of the grantor, was sufficient evidence in that respect.

The judge charged, "if the goods had been transferred to Mr. Walsh, with the intent to hinder, delay or defraud the creditors of Mooney, Manley & Co., &c. &c., then the transfer is void, and the creditors of Mooney, Manley & Co. could attach the goods." And again, "a transfer of goods by one who is indebted or insolvent, or whether insolvent or not, with the premeditated design and intent to defraud some creditor of his, and deprive him of the ability to collect his debt, may be under such circumstances, that if the goods be

followed, the law will regard it as an actual fraud between him and his vendee." The judge then gives an illustration by a combination between two, "one to sell goods and the other to buy them, for the very purpose of preventing a third person from collecting his debt. * * * It may be done," he says, "I have no doubt, where one of these parties shall be a creditor, if it is done with that intent and design."

The charge embodies the propositions of the defendant's counsel, except as to the notice to be derived from facts and circumstances of the vendor's fraudulent motive, and as to that, there is nothing in the case calling for the instruction asked for.

The plaintiff's knowledge of facts and circumstances tending to prove a fraudulent motive on the part of the vendors, need not be sought for or inferred from obscure or doubtful indications in this case. If such a motive existed, the evidence implicated the vendee as much as the vendors.

There was an agreement between them to defraud the other creditors of the vendors, or else the sale was for the honest purpose only of satisfying the debt due to the plaintiff. There is no room to charge the plaintiff with notice of a fraudulent intent on the part of the vendors, from facts and circumstances, when it is plain, that if there was any such intent, the plaintiff was " art and part" in it.

The judge directed the jury to inquire " whether the vendors had a fraudulent intent, and if they had, that the sale was void, and this without the qualification that the sale was not supported by the consideration of an honest debt," or that the vendee had notice, from facts and circumstances, of a fraudulent motive on the part of the vendors.

The charge was more favorable for the defendant than the requests, in these respects.

The defendant also insists that the judge did not properly meet the fourth and sixth requests made by him. The fourth request assumes that the property of Mooney, Manley & Co. was transferred to the plaintiff in payment of a debt due

from G. & F. Mooney, or by G. & F. Mooney & Co. Whether Mooney, Manley & Co. were indebted to the plaintiff, was a question of fact for the jury. The judge charged, in conformity with this request, in every other respect, viz: that a firm composed of three members had no right to apply the property of that firm to the payment of the debts of two of its members.

The sixth request also assumes that the property in question was so transferred, and was subject to levy under the attachments held by the sheriff. The judge properly charged so as to give the question of transfer to the jury, viz: if the property of Mooney, Manley & Co. was transferred to the plaintiff, in payment of the debts of G. & F. Mooney, it was subject to seizure under the attachments, if the persons who set the sheriff in motion were creditors of Mooney, Manley & Co. The charge appears to have been correct in these respects.

The eleventh and twelfth requests are also made the subject of an exception. Both of these requests call upon the court to withdraw from the jury two subjects, which were properly within their province, as questions of fact. (1.) That George Mooney was a member of the firm of Michael Walsh & Co. and also of Mooney, Manley & Co. (2.) That the transfer of the property of Mooney, Manley & Co. to the plaintiff was for the benefit of one of the members of that firm, and, as against their creditors, was fraudulent and void. The judge would not have been justified in taking these inquiries from the jury, and the exceptions here are not well taken.

The witness, George Mooney, was asked: "Were you a member of the firm of Michael Walsh & Co.?" This question was admitted, against the objection of the defendant, and an exception was taken. Such an inquiry does not, certainly, relate only to a conclusion of law; if it did, the question would be clearly inadmissible. There might have been an agreement on the subject; the inquiry might have been

competent, and in such case it could not be excluded. The witness answered that he did not consider himself a partner. It amounted to nothing as evidence, and was his opinion, merely, without professing to state how the fact was. No doubt it would have been stricken out if the defendant had requested it.

The same answer applies to the exception taken to another question addressed to the same witness, viz: " Did your firm of Mooney, Manly & Co. own the said stock of goods or any interest therein ?" Under ordinary circumstances this inquiry would call for a fact and not for a conclusion merely. It was the office of a cross-examination to discover whether the witness stated in his answer a fact or a conclusion. These questions were admissible.

The defendant inquired of Mr. Eyland, a witness for the defense, as to the character of certain goods taken from the store of Mooney, Manley & Co. to the store of another firm in the city of New York. The question was excluded on the plaintiff's objection, and the defendant excepted. The ruling was correct. The character of those goods could have no apparent relation to the title of the goods transferred to the plaintiff.

The defendant also sought to inquire whether Geo. Mooney made application to a party, then a witness on the stand, for a loan of money to Mooney, Manley & Co., and stated that the firm must fail unless they obtained the loan, and that they did in fact fail in a few days. The evidence was excluded and the defendant excepted. It was urged by the defendant that if Mooney was a partner of the plaintiff, he had knowledge of the facts that ought to put him on inquiry.

The knowledge that a firm is in failing circumstances will not *per se* render it unlawful for a creditor to receive a transfer of goods from the failing firm in satisfaction of a demand. No legitimate inference could be drawn from the proposed evidence that the transfer to the plaintiff was fraudulent.

These exceptions are none of them well taken. There are

other exceptions in respect to the admission or exclusion of evidence, but these are all that were urged before us as ground for a new trial.

The judgment should be affirmed, with costs. The judgment record is bad in form, but the verdict is correct and the record may be amended so as to conform to the code.

[NEW YORK GENERAL TERM, May 4, 1864. *Leonard, Sutherland* and *Clerke,* Justices.]