## Case No. 2,199.

### BURRILL v. LAWRY.

[18 N. B. R. 367;[1] 2 Hask. 228; 11 Chi. Leg. News, 33; 24 Int. Rev. Rec. 342.]

District Court, D. Maine. Feb., 1878.

BANKRUPTCY—FRAUDULENT CONVEYANCES.

1. Where one of the motives which prompts a conveyance by one member of a firm to his partner of his interest in such firm is to hinder and defeat creditors, such conveyance is fraudulent at common law, and is denounced by the express provisions of the bankrupt act [14 Stat. 517], although other considerations may also have induced the conveyance.

2. A creditor of the bankrupt having issued an attachment against him, defendant, who was the bankrupt's partner, procured a delay in its execution, and in the meantime purchased the bankrupt's interest in the firm for four hundred dollars, without taking account of stock or of firm debts and assets. The purchase money was returned to defendant, who placed it in a safe, from which it was drawn out by the bankrupt from time to time as he called for it. In an action by the assignee in bankruptcy to invalidate the sale, defendant claimed that he purchased the bankrupt's interest for the sole purpose of getting rid of him and protecting his own interests. Held, that both parties to the transaction were chargeable with having contemplated the result accomplished thereby, and must be considered guilty of intending to hinder and delay this creditor in obtaining security for his demand.

[Bill by an assignee in bankruptcy to set aside an assignment by one Farnsworth, the bankrupt, of his interest in a copartnership. Decree for complainant.]

E. F. Webb and S. S. Brown, for complainant.

D. D. Stewart, for defendant.

FOX, District Judge. Farnsworth was adjudged bankrupt July 25, 1876, on an involuntary petition filed June 19th, and the complainant was duly appointed assignee, and now brings this bill to invalidate an assignment made by the bankrupt to defendant on the 26th day of April, 1876, of all his interest in the co-partnership effects of O. W. Lawry & Company, a firm composed of the bankrupt and said Lawry. It is claimed in the bill—First, that this assignment was made in fraud of Farnsworth's creditors, and for the purpose of delaying and hindering them in collecting their demands, and that the consideration therefor was grossly inadequate; and second, that Farnsworth was indebted to Lawry, and he thereby obtained a preference in fraud of the bankrupt act. The answer denies all fraud and fraudulent preference, and avers that the bankrupt was not indebted to the defendant, but that the respondent "being of opinion and belief that he could manage the business of said co-partnership better alone than in company with said Farnsworth, and that if said co-partnership continued it would soon be unable to pay the

---

[1] [Reprinted from 18 N. B. R. 367, by permission.]

partnership debts with the partnership property, he believed his only prudent course was to buy said Farnsworth out and get rid of him, and he did so, paying him in cash the full value of his interest, and more, too, than any other person could possibly have afforded to pay."

Farnsworth was a tailor, and in May, 1873, formed a co-partnership with Joseph M. Fogg, for carrying on the clothing business at Fairfield. They continued in trade until October 13, 1875, when the defendant purchased the interest of said Fogg, and a new firm was formed, under the style of O. W. Lawry & Company, between said Lawry and Farnsworth. Fogg received for his interest in the firm of W. P. Farnsworth & Co., nearly two thousand three hundred dollars, with Lawry's agreement to indemnify him against firm liabilities to the extent of three thousand dollars. The debts in fact amounted to three thousand four hundred dollars. At this time Farnsworth was indebted to Fogg in the sum of nine hundred dollars, for which Fogg received Farnsworth's note on six months with a mortgage on his interest in the stock belonging to the firm. This note was not paid at maturity, and the mortgage security was of little account, as most of the goods were disposed of before the note became payable. Fogg, on the 25th of April, commenced an action upon this note, and placed his writ on that day in the hands of an officer with instructions endorsed thereon "to attach defendant's interest in the stock of goods in store in Fairfield village." There is not an entire harmony in the statements of all the witnesses as to what was said and done after defendant received notice of this suit, but from a careful examination of all the evidence, I find that on the afternoon of April 25th the officer notified the defendant and Farnsworth of this writ, and his instructions thereon; that the defendant denied the right of the plaintiff to make such an attachment; that he went with the officer to the attorney of Fogg, who explained to him his views of the law, reading to him from some of the opinions of the supreme court of this state; that defendant had not then consulted with any other attorney, and, as it was getting late, he thereupon agreed with the officer and the attorney of Fogg "to let the matter rest just as it was till morning, and he would then do one of two things, either turn out an amount of goods sufficient to pay the debt or get a receipt for the same," and this was assented to by the officer and attorney. In the course of the evening defendant consulted with another attorney, and upon his advice, as it was said, the defendant purchased all of Farnsworth's interest in the co-partnership effects for four hundred dollars, taking a bill of sale, and agreeing to pay all the company liabilities. No account of stock or of the debts due to or from the firm was taken, but this sum of four hundred dollars was agreed upon by the

parties, as the fair value of Farnsworth's interest in the firm, and this amount was then paid to him in cash by the defendant, by whom the next day, when the officer called upon him, the stock was claimed as his sole and absolute property. Farnsworth's purpose, it is most manifest, was by this transaction to defeat and prevent an attachment by Fogg of his interest in the firm, and to have the business continue to be carried on by defendant, who agreed to employ Farnsworth as a cutter at the rate of fifteen dollars per week. Lawry knew that Farnsworth was insolvent, and that suit had been instituted on this note of nine hundred dollars, and he could not but have understood the motives which actuated Farnsworth in thus disposing of his interest in the firm, and while he no doubt was anxious to relieve the business from the troubles which would attend an attachment of Farnsworth's interest, he was also ready and willing to assist him in defeating Fogg from obtaining any security for any portion of his claim. If his sole motive in buying out Farnsworth's interest was the protection of his own interest, the least he could have done after the express agreement made by him with the officer and the attorney of Fogg, that matters should remain as they were till morning, would have been to retain the four hundred dollars to pay Fogg, as and for Farnsworth's interest in the concern; but, instead of so doing, after the payment of the sum to Farnsworth, it was returned to Lawry, to be kept in his safe, subject to the control of Farnsworth, by whom the larger portion of it was withdrawn, from time to time, as he called for it.

It is but seldom that a court is called upon to sanction such dishonest and dishonorable conduct as that of the defendant and Farnsworth, and no authority has been produced which, in the opinion of the court, affords the slightest justification therefor. It is said it was but a race of diligence between the defendant, to protect his interest as a partner in the co-partnership effects, and a creditor of one member of the firm, to secure his demand by an attachment of the debtor's interest in the firm estate; but the answer to this suggestion is, that the law had already provided what it deemed an adequate protection to the partner, in case the interest of his co-partner should be taken on legal process. Such a creditor would by so doing obtain only the interest of his debtor as one of the firm in the estate of the firm, after the other members of the firm had been indemnified from the firm estate, against the partnership debts, as well as their own claims against the firm, for all which they had a lien upon the partnership property. Whatever might remain belonging to the debtor, the law had declared should be subject to the claims of the creditors of the individual members of the firm. Such an interest was attachable, and any scheme of the parties

to place the same beyond reach of legal process, and to defeat the individual creditor in obtaining security for his claim, was clearly fraudulent at common law, and is also denounced by the express provisions of the bankrupt act. The defendant might have sustained loss and inconvenience if the co-partnership had been dissolved by the attachment and sale of Farnsworth's interest in the concern; the business would certainly have been thereby interrupted; but the risks of such losses necessarily attend all co-partnerships, and the law has never yet afforded any protection therefrom, and will not justify a partner in so conducting with his insolvent co-partner and the estate, as to defeat an individual creditor when endeavoring to obtain security by legal process from the interest of his debtor in the firm, which might otherwise be applied to the satisfaction of his demand.

In the opinion of the court, Farnsworth and Lawry were alike actuated by the double purpose to prevent Fogg obtaining security for his demand, as well as to avoid the disturbance of the firm's business by the attachment; and under such circumstances, when one of the motives which prompts a conveyance is to hinder and defeat creditors, such a transfer is certainly fraudulent at common law, although other considerations may also have induced the conveyance. The case of Crowningshield v. Kittridge, 7 Metc. [Mass.] 520, sustains this proposition in its fullest extent. See, also, Kimball v. Thompson, 4 Cush. 446, 447. I am aware that Lawry in his testimony insists that his sole motive in the transaction was to protect his interest in the firm. But little reliance should be given to his statements as to his motives after the deception and falsehood practiced by him upon the officer and attorney, which, although denied by him under oath. are proved by the positive testimony of two disinterested witnesses. It appears that after Fogg's note became payable, he called upon Lawry and Farnsworth to assist him in selecting the goods which were on hand at the time of the execution of the mortgage which conveyed Farnsworth's interest therein, but that neither of them would render him any aid in his effort to get possession of the property: that after the officer had informed them of his instructions, Lawry, by falsehood. delayed the attachment, and during this time, at Farnsworth's suggestion. as he says, the trade was made and completed between them for Lawry's purchase of Farnsworth's interest in the firm for the sum of four hundred dollars, without taking any account of stock or of the firm debts or assets, and with such haste and so little knowledge of the real condition of the business, that Lawry now contends that he paid much more than his interest was actually worth, although only six months previously, with little or no material change in the situation of the firm. he had paid Fogg, the retiring partner, nearly

two thousand three hundred dollars for his interest in the concern. Farnsworth paid no part of the amount thus received by him from Lawry to Fogg, but the whole was returned to Lawry for safe keeping, and by him deposited in his safe, the whole being thus placed beyond ordinary process, but in Lawry's control, so that he might probably be able to protect himself if Fogg should persist in his attachment and break up the partnership. The inevitable result of these proceedings was to defeat Fogg's attachment, and it is but reasonable to hold these parties chargeable with having contemplated the result which they have thus accomplished, and they therefore must be considered as guilty of intending to hinder and delay this creditor in obtaining security for his demand, and which the court entertains no doubt was a motive with them both, full as cogent as their purpose to protect the interests of Lawry in the firm estate.

Cases from Maine and Massachusetts reports have been referred to by the learned counsel in defense, in which a creditor has been sustained in receiving from his debtor payment of a bona fide indebtment, although one purpose of the debtor in so doing was to prevent other creditors from being paid. All such cases are wholly different from the present, as in each of them there was an existing bona fide debt actually paid. and the common law has always sanctioned a preference of creditors, although it may have absorbed all the debtor's estate, to the exclusion of all other creditors. No such element of indebtment from Farnsworth to Lawry is claimed by the parties to this conveyance to have here existed. Lawry in his answer denies that he was, at that time, a creditor of Farnsworth, and the court is well satisfied that it was the intention of the parties to defeat the attachment of the debtor's interest in the firm estate, as contemplated by the creditor, and which the law had made liable to be so appropriated. It is also claimed that the transfer by Farnsworth of all his interest in the co-partnership effects was a fraudulent preference of Lawry as a creditor, within the meaning and intent of the provisions of the bankrupt act, it being contended that Lawry was a creditor of Farnsworth for one-half of the amount paid by him in discharge of the liabilities of W. P. Farnsworth & Co., and which sum was paid to him by Farnsworth's release of all his interest in the partnership effects of O. W. Lawry & Co. Some ground for this view is found in Farnsworth's statement in his examination, viz.: "Lawry was to furnish enough money to pay my half of the outstanding bills." As the conclusion that the sale was invalid at common law is decisive of the cause, it becomes unnecessary for the court to examine and pass upon this objection.

It appears that Fogg commenced an action in the state court against Lawry to recover of him, under the provisions of chapter 113,

§ 51, Rev. St. [1871] [2] Me., for knowingly aiding Farnsworth in fraudulently transferring and concealing his property, double the value of the property. This action was not maintained, but it is relied upon in the answer as a defense to the present suit. It is sufficient to remark that the judgment in the suit, Fogg v. Lawry, is not admissible in this cause, and can have no effect in a controversy between the assignee in bankruptcy, who represents all the creditors of the bankrupt, and Lawry, who was successful in the state court. The fact that Fogg is the only creditor who has proved his claim is of no consequence, as there are many other creditors who may hereafter establish their right to share the assets, if any shall come to the assignee. At the argument it was claimed that a part of the four hundred dollars paid by Lawry to Farnsworth, viz.: ninety-five dollars and sixty-seven cents, was paid to the United States marshal, as messenger, by Farnsworth, when called upon to surrender his estate, and as this sum has never been tendered back to the defendant, the transfer here impeached must be deemed to have been ratified and confirmed by complainant.

No such question is presented by the pleading. It is not alluded to in any way in the answer, nor does it appear that the complainant has ever received any part of this sum from the marshal. There is no evidence as to the disposition made by the marshal of this sum; whether it was or not restored by him to Farnsworth, or the respondent, after the complainant's demand upon the latter, in writing, for the property, before this suit was instituted, or whether it is or not still in the marshal's hands, subject to the respondent's control. "Qua non apparet non est;" and as it is not established that the complainant has, in any way, affirmed the transfer of this interest in the firm estate of O. W. Lawry & Co., which in the opinion of the court was fraudulent and void against the creditors of Farnsworth, it is so ordered and decreed. and the case is referred to Chas. Hamlin, Esq., commissioner, to ascertain and report the fair cash value of the interest of said bankrupt in the estate of O. W. Lawry & Co., thus fraudulently conveyed to said Lawry.