McELROY (MILLER v.). See Case No. 9,-581.

McENTEE (UNITED STATES v.). See Case No. 15,673.

---

## Case No. 8,783.

### In re McEWEN et al.

[6 Biss. 294;[2] 12 N. B. R. 11; 7 Chi. Leg. News. 231; 2 Cent. Law J. 233.]

District Court, D. Indiana. Feb. 2, 1875.

BANKRUPTCY — PARTNERSHIP — JOINT AND SEPARATE ESTATE—ASSETS EXHAUSTED IN COSTS —PAYMENT PARI PASSU.

1. When a debt from one partner to a bankrupt firm was incurred by the consent or privity

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

of the other partners, proof of the joint creditors against the separate estate will not be admitted in a court of bankruptcy.

[Cited in Re Lloyd, 22 Fed. 91.]

2. When all the assets of a bankrupt firm are expended in the payment of costs, and there is no fund to be divided among the firm creditors, the firm and individual creditors must be paid pari passu out of the separate estate of each partner.

[Cited in Re May, Case No. 9,328; Re Slocum. Id. 12,951; Re Hamilton, 1 Fed. 812; Re West. 39 Fed. 203.]

[Cited in Harris v. Peabody, 73 Me. 270.]

3. The fund applicable to and used in the payments of costs does not constitute a joint estate within the fair meaning of the bankrupt act [of 1867 (14 Stat. 517)].

The assignees filed a petition in the interest of the firm creditors, for the purpose of obtaining the instruction of the court upon the respective rights of the firm creditors of McEwen & Sons, and the individual creditors of William McEwen, one of the members of such firm alleging: 1st, that the firm assets would not more than pay the costs of settling the estate in bankruptcy; 2nd, that William McEwen was indebted to the firm, as appeared by charges upon the books, to an amount exceeding three hundred thousand dollars; that the firm debts amounted to over $200,000, and William's individual indebtedness to over $150,000, and that his separate estate was worth over $200,000, and that his sons, who were his partners, had no more property than enough to pay their private debts; and that the only estate in the hands of assignees for distribution among creditors is the private estate of William McEwen. The individual creditors appear in opposition to the petition, and file a demurrer thereto.

Harrison, Hines & Miller, for assignee.
McDonald. Butler & Harrington, for individual creditors.

HOPKINS, District Judge. The question raised and discussed on the hearing was, whether upon the facts stated, the firm creditors were entitled to participate with the individual creditors in the distribution of the separate estate of William McEwen? In the first place, the assignees claim the right to prove the debt due from William to the firm, and in that way obtain a fund for distribution among firm creditors.

The petition does not show when the entries were made on the firm books, nor when the debt was created, nor does it show that William withdrew that amount, or any part of it, to defraud the firm creditors, or the members of the firm; nor does it show that the transaction was concealed from the firm, nor that it was not with the consent of all the members of the co-partnership. Neither fraud nor collusion of any kind is alleged.

Upon these facts does that balance constitute a debt in favor of the firm against that partner which the assignee of the firm can prove against him individually? I think, ac-

cording to the authorities, it does not. The rule may now be considered as well settled, that when the debt from one partner to the firm was incurred by the consent or privity of the other partners, that proof of the joint creditors against the separate estate will not be admitted in a court of bankruptcy. If the party acted fraudulently or with a view to augment his separate estate at the expense of the joint creditors, a different rule would prevail. Story, Partn. § 391; Gow, Partn. 316; Ex parte Smith, 1 Glyn & J. 74; Ex parte Harris, 2 Ves. & B. 210; In re Lane [Case No. 8,044].

The principle upon which these cases rest is, I apprehend, that there can be no such thing as a debt between partners, or between an individual partner and his firm, in respect to partnership matters, until it is settled by a final winding up of the affairs of the firm; and bankruptcy courts have declined to go into such accounting upon the question of proof of debts in bankruptcy proceedings. So I must hold that neither the assignees of the firm, nor the firm creditors have a right upon this ground to prove this claim against the private estate of William McEwen.

There is something like an allegation in the petition that the partnership between William McEwen and his sons was a sham, and made simply for the benefit of William, and to enable him to carry on his private speculations. It is doubtful whether this question can be raised at this stage of the case. They have been treated as partners and adjudged to be bankrupts, as such partners, on the petition of the joint creditors. I doubt the right of the joint creditors to now turn around and allege that they were not such in fact; but if this is not so, I do not think the allegation to that effect sufficiently direct and positive to warrant the court in holding the fact to be admitted by the demurrer. It seems to be stated, inferentially, as the conclusion of petitioners from the other facts in the case, instead of an allegation of an existing fact.

This brings me to the consideration of the meaning of section thirty-six of the bankrupt act, and this is altogether the most difficult question in the case. The petition alleges that the firm have no assets after paying costs of settlement of estate to distribute or divide among the firm creditors, which is admitted by the demurrer and must be considered on this hearing as true.

If they have no assets, it has been settled, for this circuit at least, that the firm and individual creditors can be paid pari passu out of the separate estate. In re Knight [Case No. 7,880]. The counsel for the individual creditors contended that the allegation in the petition that the firm effects would not more than pay the costs was immaterial; that the question was, were there any firm assets? that if there were, it was unimportant whether they were to be applied to the payment of

the costs or distributed among the firm creditors; that in either case the firm creditors would be excluded from participation in the separate estate of William McEwen until after the payment of his individual creditors in full; and that it was not essential that there should be a fund, exclusive of costs. to effect such result. If such is the meaning of the act, the firm creditors are without remedy, and may lose their whole demand, while the individual creditors of that member may get their pay in full.

The question is by no means free from difficulty. But after a thorough examination of the authorities upon the subject, I have arrived at a conclusion different from that contended for on the argument by the learned counsel for the individual creditors. In Re Kahley [Case No. 7,594], I held that the word "estate," as used in certain other sections, included the portion to be used in the payment of costs, as well as that to be divided among creditors. But the language of the portions of the act then under consideration differ materially from the language used in the thirty-sixth section. That section requires the assignee to "keep separate accounts of the joint stock or property of co-partnership, and of the separate estate of each member thereof, and then provides, that after deducting out of the whole amount received by such assignee, the whole of the expenses and disbursements, the net proceeds of the joint stock shall be appropriated to the payment of the creditors of the co-partnership, and the net proceeds of the separate estate of each partner shall be appropriated to the payment of his separate creditors." And it further provides that the residue of either estate, after the payment of the debts in the order above mentioned, should be divided among the creditors, firm or private, as the case might be. I think the expression "net proceeds," shows that congress had reference to the estate to be distributed among the creditors, and only meant to exclude one class in case there were some funds for distribution in the class to which such creditors belonged, so that. when all the assets are expended in the payment of costs and there is no fund to be divided, as in this case, among the firm creditors, the firm and individual creditors are to be paid pari passu out of the separate estate of each partner. It then presents the case in the language of Judge Drummond in Re Knight [Case No. 7,880], "that being the only source to resort to the payment of the debt of the firm, it should be appropriated as well to pay the debts due from the firm as from the individual members." What difference is there as to the firm creditors, between no assets and a case where assets are all used in payment of costs? If there is only property enough to pay expenses, they do not get anything; they have no source of payment except from the separate property.

So I think the just and equitable reading of

the statute is that the creditors of a firm are excluded from participation in the separate estate of the members only when there is a fund to be distributed to them, to the exclusion of the individual creditors; that when neither has any advantage in a fund not alike applicable to both, they stand equal, and must be paid pro rata. In Story on Partnership (section 380) it is stated that, "if there is any joint estate, however small it may be, if it is an available joint fund, and not purely a desperate and nominal joint fund, then the joint creditor is excluded; as, for example, if the joint fund is absolutely worthless from the expenses of any attempt to get it in, or if it is pledged beyond its real value, it will be deemed a mere nullity."

I think this language plainly indicates that a joint fund, to exclude the firm creditors, must be beneficial to them. If it costs more than it comes to to get it, it is in no sense an available joint fund within the authorities. [See, also, Colly. Partn. bk. 4, c. 2, § 926.] [2] The lord chancellor in Ex parte Peake, 2 Rose. 54, where the answer to the petition of the firm creditors was that there were joint effects of £1 11s. 6d., said that joint effects to the value of five pounds or five shillings would be an answer to the application, but if the property alleged to exist was in such a situation that any attempt to bring it within the reach of the joint creditors must be deemed a desperate, or in point of expense an unwarrantable attempt, that would authorize a departure from the rule, and allow said creditors to prove notwithstanding such property. And Lord Chancellor Eldon (Ex parte Hill, 2 Bos. & P. [N. R.] 191, note), says, "Joint effects means such as are under the administration of assignees to distribute." In Ex parte Janson, 3 Madd. 229, it is said: "The principle being that while there is any other fund, however small, to resort to, the joint creditors can not prove against the separate estate of one of the parties who has become bankrupt."

These cases were decided under the English bankrupt law, which was similar in the respect under consideration to our own, and, therefore, are important as showing that the English courts recognize the exception to the statute rule in cases where there is no joint fund to resort to, or that is available to the joint creditors, and are very important in settling the proper construction of the section of the bankrupt act under consideration. That section lays down the general rule, as contended for by counsel for individual creditors, but it is to be regarded as subject to the exceptions above stated, and I think the facts alleged in the petition bring this case within the doctrine of these authorities and exceptions.

The counsel for the individual creditors referred to Ex parte Kennedy, 19 Eng. Law & Eq. 150, as laying down a different rule.

[2] [From 12 N. B. R. 11.]

That case does not appear to be supported by authority. The decision is based upon In re Bridge & Keale, Id., referred to in note. It does not appear that the court in that case decided this question. No opinion is given; simply the order of the court, and it might have been based upon the fact that there was other property besides, to wit: the "brig" therein mentioned, and so not have turned upon the question of costs, as claimed. But without further notice of that case as it is in conflict with the general current of English cases, I cannot adopt its conclusions.

The Case of Marwick [Case No. 9,181], cited to same effect by counsel, does not show that this question was raised, and therefore furnishes no support to this claim. I am also supported in my conclusion by the case of In re Jewett [Id. 7,304]; In re Downing [Id. 4,044]; Bump, Bankr. 188, 189. As before stated, I have assumed the fact that the whole joint estate will be used in payment of the costs of the proceedings in bankruptcy, leaving no joint fund for distribution, nor any funds to be marshaled. I have, as before stated, with considerable hesitation, come to the conclusion that the fund applicable to and used in the payment of the costs of the proceedings does not constitute a joint estate within the fair meaning of the bankrupt act, so as to deprive the firm creditors of participating with the individual creditors in separate estate. To hold that a fund used in payment of necessary costs is to have the same effect upon the joint creditors' rights as if distributed among them, is, in my judgment, a very unjust and unreasonable conclusion, and I cannot adopt it.

I, therefore, overrule the demurrer, with leave to the respondents to put in an answer within twenty days after notice of this decision. If they fail to do so, I direct an order to be entered that the individual creditors of William McEwen, and the firm creditors of McEwen & Sons be paid pari passu out of the separate estate of the bankrupt William McEwen, in the hands of the assignees in this case.

[For an appeal to the circuit court from subsequent proceedings, see 4 Fed. 13.]