---

## Case No. 9,328.

In re MAY et al.

[19 N. B. R. 101.] [1]

District Court, S. D. New York. March 15. 1879.

BANKRUPTCY — PARTNERSHIP — WITHDRAWAL OF MONEY BY PARTNER—FRAUDULENT INTENT— KNOWLEDGE OF INSOLVENCY.

Where one of the members of a firm has withdrawn moneys therefrom with intent to use them for his private purposes, but such withdrawal was not fraudulent as against his copartners, the assignee of the firm cannot prove therefor against the separate estate of such partner, even if the firm estate was known to be insolvent at the time, and the withdrawal was made with knowledge of the insolvency.

[Cited in Re Lloyd, 22 Fed. 91.]

[In bankruptcy. See Case No. 9,325.]

C. W. Bangs, for motion.
T. Saunders, contra.

CHOATE, District Judge. This is a motion to expunge a proof of debt filed by the assignee of the two bankrupts against the individual estate of Berwin, one of the bankrupts. The deposition of the assignee avers "that the said Aaron Berwin, one of the said bankrupts, and a member of the firm composed of them, and called May & Berwin, in and before the filing of said petition (for adjudication) was, and still is, justly and truly

---

[1] [Reprinted by permission.]

indebted to deponent, as assignee of said bankrupts, in the sum of thirteen thousand six hundred and fifty dollars, and interest, as hereinafter stated. That such indebtedness has for consideration, and arose in the following manner: At the times hereinafter mentioned, said Aaron Berwin, being a copartner in said firm, composed of himself and August May, both above named, and being then insolvent, did fraudulently and with a view to benefit his separate estate and creditors. if any, at the expense of the creditors of said firm, draw out of and receive of the firm bank account and assets the following sums of money, to wit: July 11, 1872, five thousand dollars; July 15, 1872, one thousand five hundred dollars; August 2. 1872, one thousand five hundred dollars; November 26, 1872, five thousand six hundred dollars; altogether, thirteen thousand six hundred and fifty dollars, and thereupon paid twelve thousand eight hundred dollars of the same to George King, his brother-in-law, upon an alleged individual debt; that said money had been returned to the individual estate of said Berwin." The executors of one King, who proved a debt against the individual estate of Berwin. have taken these proceedings for the examination of this proof of debt, and now move that it be examined. Some technical and formal objections are made to the proof filed, which it is unnecessary to discuss, as they are susceptible of amendment if the assignee of the joint estate has the right to make proof of this claim against the separate estate of Berwin.

The facts shown in the case are that May and Berwin entered into copartnership in or about the year 1864, that Berwin put in sixteen thousand dollars as capital. The amount that May was to put in does not certainly appear, but it was less than Berwin was to put in. Both were to give their time and services in the business, and they were to share equally in the profits. They began under written articles, which appear to have been lost; and after the term ran out, they continued the business without articles or definite agreement as to the term of the partnership. Interest was not allowed or paid on their capital accounts. The firm did business on credit, and at all times had occasion to borrow money to carry it on. In or about the year 1869, Mr. Berwin drew out funds which before that he had had invested in some other business, and he paid these moneys. to the amount of about forty-six thousand dollars. into the firm of May & Berwin. This money stood on the books of the firm to the credit of an account opened under the name of P. Berwin & Bro.; but it was understood by both parties to be, and was in fact when paid in, the money of Berwin. It was treated in all respects by the firm as money loaned by Berwin to the firm. Interest was allowed on it. and credited in the account. At the several times stated in the proof of debt, Berwin drew out of the firm's bank account the several sums therein specified, and these payments were debited to this account on the books of the firm. There was no agreement whatever at the time the money was paid in, nor afterward, between May and Berwin as to the length of time that the firm should have the use of it. There was no agreement between them that it was, or was to be treated. as capital. While it was in the firm, the firm had the use of it, as of any other moneys borrowed. When Berwin drew out the sums above referred to, amounting in all to thirteen thousand six hundred and fifty dollars, or at some of the times when he drew out parts of it, May objected to his doing so; but there is no evidence that he put his objection on the ground that 'in drawing it out Berwin had violated any partnership obligation towards him or any agreement between them. He testifies indeed that he did not suppose Berwin had a right to draw it out, but he states no fact whatever tending to show that any agreement or obligation was violated in his doing so. The firm continued to do business, borrowing money, getting discounts, paying its notes and other obligations, buying and selling goods, and enjoying a large credit, until the 13th of December, 1872, when it suspended payment, and on the 20th of the same month was put by its creditors into bankruptcy. At the time Berwin drew out these sums he had overdrawn his personal account with the firm about nineteen thousand dollars, and May had overdrawn his about twenty-two thousand dollars. A critical examination of the assets and liabilities of the firm would probably have disclosed that as early as July, 1872, when the first of these sums mentioned in the proof of debt was drawn out, the capital of the firm was gone. and that when the last of them was drawn out the firm was insolvent; but the evidence does not warrant the conclusion that any of this money was drawn out when Berwin contemplated insolvency or bankruptcy, or with intent on his part to withdraw it from the firm creditors for the purpose of giving a preference in the distribution of the assets to his individual over his firm creditors. For aught that appears, he may then have believed that the firm would go on and all its obligations be paid.

The testimony of the assignee that some time in the year 1870 the partners both told him that Mr. Berwin had put more money into the firm. and that of another witness who had dealings with the firm. that in 1872 they told him that Berwin had put more capital into the concern, is not sufficient to impress on this money. as held by the firm, the character of capital rather than money loaned, which the evidence shows it clearly to have been. As to the language used, these witnesses are to some extent contradicted, and even if their recollection as to the words used were accepted as wholly trustworthy. they testify to nothing which impairs the right of

Berwin to draw this money out when he pleased as between him and his partner May.

The general rule that for moneys drawn out by a partner the joint estate cannot prove against the individual estate, is admitted by the counsel for the assignee; but it is claimed that where the firm were insolvent at the time the money was drawn out with the intention to give a preference to individual creditors over firm creditors, by using it in the payment of individual debts, then the withdrawal of it is fraudulent against the firm creditors, and the assignee of the firm can make proof against the individual estate. The authorities, however, do not sustain the claim of the assignee as applied to the present case. The right of the firm estate to prove a debt in bankruptcy against the separate estate of one of the partners has been much discussed in England. In the case of Ex parte Harris, 2 Ves. & B. 212, Lord Eldon thus states the rule and the history of it: "There has long been an end of the law, which prevailed in the time of Lord Hardwicke; whose opinion appears to have been, that, if the joint estate lent money to the separate estate of one partner, or if one partner lent to the joint estate, proof might be made by the one or the other in each case. That has been put an end to, among other principles, upon this certainly, that a partner cannot come in competition with separate creditors of his own, nor, as to the joint estate, with the joint creditors. The consequence is, that if one partner lends one thousand pounds to the partnership, and they become insolvent in a week, he cannot be a creditor of the partnership, though the money was supplied to the joint estate; so if the partnership lends to an individual partner, there can be no proof for the joint against the separate estate; that is, in each case, no proof to affect the creditors, though the individuals may certainly have the right against each other. The opinion of Lord Talbot seems also to have been in favor of this proof. But in and previously to the year 1790 great discussion took place at this bar, the result of which, according to Lord Thurlow's opinion, was expressed particularly in the case of Dr. Fendal and Lodge. The former, a physician, embarked a very large property, his whole fortune, in a partnership with Lodge, whom he permitted to have the whole management, and a bankruptcy ensuing, Lord Thurlow held that, as it was with knowledge and permission of Fendal that the whole management of the property was with Lodge, he was authorized to do as he thought fit with the partnership property, and Fendal must therefore abide the consequences of what had been done most improperly, but under his own authority, most imprudently given, and there could therefore be no proof. The law has been clear from that time that to make out the right to prove by one estate or the other, it must be established that the effects joint or separate, have been acquired by the one or the other improperly and fraudulently, in the sense that they have been acquired under circumstances from which the law implies fraud, or in the sense to increase his own means out of the partnership estate. Lord Thurlow, by 'fraud,' intended to express what he thought necessary to distinguish that from taking by contract or loan, or without the express or implied authority of the other partner, and that such act must amount to fraud. Upon this case I formerly expressed my opinion, and I now lay down, that if in either the expressed or implied terms of an agreement for a partnership there is a prohibition of the act, and it is done without the knowledge, consent, privity, or subsequent approbation of the other partner before the bankruptcy, and to the intent to apply partnership funds to private purposes, that is prima facie a fraud upon the partnership. To illustrate this, I will put the simple case of a partnership between two, and by the articles all the money is to be paid into their joint names at a particular bank, and they are prohibited from drawing out more than fifty pounds a month each for individual purposes; that during the month of January they mutually observed these articles by paying in, and on the 1st of February, one, instead of fifty pounds, draws out five hundred and fifty pounds, and upon the next day a bankruptcy happens; if it is made out that this overdrawing was for private purposes, and without the knowledge, consent, privity, or subsequent approbation of the other, as it was for private purposes, and therefore must be for the increase of the individual's estate, and as it was against the covenanted rights, or rather the prohibitions affecting both, and without the knowledge, consent, privity, or subsequent approbation of the copartner, it is as much a fraud within Lord Thurlow's rule as if, according to the expression I am informed I formerly used, he had stolen the property." This rule is again applied and illustrated in the cases of Ex parte Yonge, 3 Ves. & B. 31, and Ex parte Turner, 4 Deac. & C. 169. In the case of In re Lane [Case No. 8,044], Lowell, J., says: "The general rule in bankruptcy is that there can be no proof between the joint and separate estate of partners, unless there is a surplus of the joint estate to be divided. This rule was adopted partly as being upon the whole equitable, on the supposition that the joint creditors had given credit to the joint estate, and the separate creditors to the separate estate, respectively, and partly, I apprehend, upon the consideration that there is no such thing as a debt between partners or between a partner and his firm, in respect to partnership matters, excepting upon a winding up of all the affairs, and it was found to be very expensive and inconvenient to go into a general accounting in bankruptcy, and it was thought more expedient as well as more just to take the estates as the parties left

them." To the same effect is the opinion of Hopkins, J., in Re McEwen [Id. 8,783]. See, also, In re Cooke [Id. 3,170].

Without calling in question the exceptions established by these English cases, which appear to be recognized in the cases last cited, as applicable under our bankrupt law [of 1867 (14 Stat. 517)], it is evident that the fraudulent withdrawal of funds from the firm assets, upon which the exception rests, is a withdrawal fraudulent as against the firm or the other copartners. It is not enough, if the partner withdrawing the money violated no duty towards his copartners in withdrawing it, that he did so with an intent to use it for his private purposes, nor does there seem to be any authority for proof by the firm against the separate estate, when there is no such fraud as against the copartner, even if the firm estate is known to be insolvent at the time and the act is done with knowledge of the insolvency.

In the present case, Berwin had a perfect right, as between himself and May, to withdraw this money. He had not agreed to leave it in the business of the firm for any definite time. It was a loan payable on demand. More than all that he had contracted to leave in the business was left there still. He was the general financial manager of the concern, and had undoubted authority to contract for and to pay off loans to the firm. May's objection merely expressed his displeasure at the act. He had no right to object to the act as in violation of any expressed or implied contract between himself and his partner. Moreover, if it would aid the assignee to show that, when the moneys were withdrawn, Berwin contemplated the winding up of the firm business in bankruptcy or insolvency, or that they must stop, the proof on that point is deficient.

The counsel for the assignee has cited, in support of his claim to prove this debt, certain cases in which the transfer of the partnership assets by the firm to one of the partners when the firm was insolvent, and with design to interfere with the proper and equitable distribution of the assets, as between firm and individual creditors, has been set aside as fraudulent against the firm creditors: Collins v. Hunt [Case No. 3,015]; In re Cook [Id. 3,150]. These cases have no application to the present. They are cases respecting the marshalling of assets as between the joint and separate estates, and not cases touching the right to prove debts as between the joint and separate estates. The principles governing the two classes of cases are distinct, and if the assignee's claim were good under these authorities, it would be not for a dividend as a creditor, but for certain money or property in specie as belonging to the joint estate. But even those cases of marshalling assets, if they afforded an analogy, would not aid the assignee in this case, since the transfer of the firm assets to one

of the copartners, where the firm is known to be insolvent, is not held to be void if made in good faith, though the necessary result of it will be, if the firm's affairs have to be wound up in bankruptcy, that the relative interests of the different classes of creditors will be thereby seriously altered. In re Long [Id. 8,476]: In re Tomes [Id. 14,084]. The assignee has been held estopped by a stipulation entered into by him with this very creditor, George King, and under which stipulation King repaid to him, as assignee of Berwin, certain money which he still retains, from claiming that money as belonging to the joint estate. Whether that stipulation and the proceedings had in this and other courts, since it was given, would also prevent him from proving a dividend against the separate estate of Berwin, thereby taking a part of the money for the joint estate, as is claimed by the counsel for King's executors, is a question that is not be determined, since upon the facts shown the joint estate is not entitled in any event to prove against the separate estate of Berwin for these moneys withdrawn by Berwin, and used by him in paying his own debts. Motion to expunge granted.