obtained from the secretary of state "a certificate that it has complied with all the requirements of law to authorize it to do business in this state." The section provides that:

"No foreign stock corporation doing business in this state without such certificate shall maintain any action in this state upon any contract made by it in this state until it shall have procured such certificate."

It does not appear that the plaintiff is doing business in this state. It therefore does not appear that it needs such certificate. In Lumber Co. v. Bussell, 84 Hun, 114, 31 N. Y. Supp. 1107, to which we are cited, it did not appear that the foreign corporation, plaintiff, was engaged in doing business in this state. The appellant cites Ladenburg v. Bank, 87 Hun, 269, 33 N. Y. Supp. 821, and other cases against foreign corporations, in which it is held that the jurisdictional facts specified in section 1780, Code Civ. Proc., must be alleged.

Section 1779 permits a foreign corporation to maintain an action "in like manner and subject to the same regulations as where the action is brought by a domestic corporation, except as otherwise specially prescribed by law." It does not appear that the contract upon which the action was based was made in this state. We think that, as it is necessary for the plaintiff to allege the conditions conferring jurisdiction against foreign corporations, so it is necessary for the defendant to allege the exceptions, if the plaintiff does not state them, which exclude foreign corporations from invoking our jurisdiction against their domestic debtors.

The order should be affirmed, with $10 costs and disbursements. All concur.

---

(13 App. Div. 142.)

In re WALRADT.

(Supreme Court, Appellate Division, Second Department. January 19, 1897.)

PARTNERSHIP—PARTNER'S DEBT TO FIRM—INSOLVENCY OF PARTNER.

A debt to a firm for loans fraudulently procured from it by a partner is provable against his insolvent estate.

Appeal from Kings county court.

Final accounting of Arthur E. Walradt, assignee of Albert H. Smith, for the benefit of creditors. From a decree sustaining exceptions to the report of a referee, and disallowing the claim of William A. Watson as assignee of Mills, Robeson & Smith for the benefit of creditors, said Watson, as assignee, appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

M. E. Harby, for appellant.

Otto C. Wierum, Jr., for respondent Walradt, assignee.

A. Pennington Whitehead, for respondent Bank of State of New York, and other individual creditors of Albert H. Smith.

CULLEN, J. The firm of Mills, Robeson & Smith were stockbrokers. Through that firm, Smith, one of the partners, operated

and speculated in stocks on his own account. In these transactions, Smith, so far as form, at least, occupied the same position as any other customer of the firm. He bought and sold stocks, which the firm either carried or borrowed for him. As security or margin on such purchases, he at times deposited certificates of stock. His account with the firm on these stock operations was the same as that of any other operator. In November, 1890, it was discovered that these stock certificates had been fraudulently altered so as to increase the number of shares represented by them. Thus, "eight" had been changed to "eighty," and "seven" to "seventy." On the exposure of the forgeries, it appeared that both the firm and Smith, individually, were insolvent, the firm's condition being caused by the frauds narrated. Smith made a general assignment for the benefit of creditors to Walradt, as assignee. The firm assigned to Watson. Watson, as assignee, presented a claim against the assignee of the individual estate of Smith for the amount which it was claimed Smith was a debtor to the firm. The referee allowed this claim at $456,714.42. To this report, exceptions were duly taken. On the hearing upon the report the county court disallowed the claim of Watson, assignee, and directed that he should not share in the individual estate of Smith. From that decree this appeal is taken.

The respondents urge two objections against the allowance of the claim of the assignee of the firm. The first is that such a claim, as matter of law, could not be proved against the assigned estate; the second, that the claim was not sufficiently established by the evidence. No opinion was rendered by the court below, and hence we are not aware of the ground on which its action was based. It becomes necessary, therefore, to discuss both questions.

The question of the right of the firm assignee to prove a claim against the individual estate of the partner has been argued with much elaboration,—an elaboration in which we shall not indulge, because of what we regard as a conclusive authority on the question, so far as the law of this state is concerned. The latest and best exposition of the law in England on the subject is to be found in Lacey v. Hill, 4 Ch. Div. 537, where the opinion was delivered by Sir George Jessell, M. R., and in the affirmance of that case in the house of lords, reported under the title of Read v. Bailey, 3 App. Cas. 94. It was there held that if the indebtedness of the partner to the firm was created by his fraud, as against the other partners, the firm claim could be proved against the individual estate, upon the ground that he had appropriated the property of the partnership to his individual use, and that it was immaterial whether, as a matter of fact, the fraudulent abstraction had increased the individual estate. It was said by the master of the rolls:

"I will go further, and say, on the authorities, that if a man steals one hundred thousand pounds, and appropriates it to gambling debts, that increases his private estate, and it is quite immaterial that the other private estate is in exactly the same position as it was before. There is no distinction, when you come to prove (the claim)."

The English rule seems to have been adopted generally in the bankruptcy courts throughout this country. In re May, 19 N. B. R. 101, Fed. Cas. No. 9,328; In re McEwen, 6 Biss. 294, Fed. Cas. No. 8,783; In re Hamilton, 1 Fed. 800. I am not sure that the English rule is the law in this state. In Bank v. Delafield, 126 N. Y. 410, 27 N. E. 797, the defendant was a member of the firm of William T. Coleman & Co. He applied to the head of the firm for leave to draw from the firm's funds the sum of $25,000 for his own purpose. The firm refused that privilege, but offered to loan the defendant that amount. The defendant drew the sum out of the funds of the firm in the city of New York. Subsequently the firm assigned to the plaintiff its claim against the defendant. The trial court having found that the transaction was a loan, the court of appeals held that the plaintiff, as assignee, could maintain an action at law thereon, on the ground that the law implied a promise to repay the sum. At the same time the court seems to have held that, if the transaction was a fraudulent conversion of the firm's funds, the action could not be maintained, for it reversed the judgment on account of the erroneous admission in evidence of a letter of the head of the firm to the defendant stating that the transaction was a loan. Under the English rule of insolvency, and the American rule in bankruptcy, the law would be the exact reverse. A loan made to a partner of the firm could not be proved against his individual estate, to the detriment of his other individual creditors; but if the indebtedness had arisen from fraud, or conversion of the firm's assets, the claim would be provable. It seems to me that the claim in this proceeding falls both within the rule in Bank v. Delafield and that of the English cases. It was a debt separable entirely from partnership transactions. It only differs from that in the Delafield Case in that it consists of a series of loans, instead of a single loan,—a fact which cannot affect the principle involved. It is also a debt created by the fraud of the individual partner. While it is true that the other partners assented to his obtaining a loan from the firm, still that assent was not given to a loan on the personal credit of Smith, but on the faith of the securities which he deposited. It was by his forgeries that Smith obtained the firm's money. We are therefore of opinion that, under the principle of either set of authorities, the appellant's claim is provable.

We further think that the question is settled in this state by the decision of the court of appeals in Cheever v. Brown, 28 N. E. 661. There one William H. Guion was a member of the firm of Williams & Guion. Williams died, leaving Stephen B. Guion and William H. Guion as surviving partners. William H. Guion became insolvent, and made a general assignment for the benefit of creditors. Subsequently, in a creditor's action, he was appointed receiver of his own firm. As such he presented a claim against his assignee for the amount due from himself individually to the firm. The referee disallowed the claim. This was affirmed at special term and at general term. The court of appeals reversed these

orders, and directed that the claim be heard before a new referee. It is true that in this case the main contention was as to the sufficiency of the evidence to establish the claim. The courts below regarded the evidence as insufficient, and hence rejected it. The court of appeals thought otherwise, and the reversal by that court proceeds on this ground. Nevertheless, not only was there in the case the question as to the right of the receiver to prove the claim, but the question was raised and argued by the counsel, though the argument seems, from the briefs, to have been perfunctory. The point was also suggested in the brief concurring opinion of Judge Barrett at general term. The case was argued and decided shortly after the decision of the Delafield Case, the opinion being written by Judge Earl. While Judge Earl does not refer to the point, I cannot believe that that distinguished judge overlooked it. He probably regarded it as settled by the previous decision in the Delafield Case. We think that the question of the sufficiency of the evidence to establish the claim needs no extended discussion. The evidence seems to come up to that standard which was regarded by the court in the Cheever Case as sufficient. But this apparent debt of Smith to the firm was subject to diminution by any amount that might appear to his credit as partner on the books of the firm, either in the account of capital, or that of profit and loss. If the amount of such credit is merely a set-off against his debt to the firm, probably it was not necessary for the assignee of the firm to show what the amount of such credit is, but he might leave that to be proved by opposing creditors. But I am not prepared to say that such credit is merely a set-off, though I will not say that such is not the law. In Bank v. Delafield, supra, the court intimated that some affirmative proof on the part of the plaintiff might be necessary to show that the debt from the partner to the firm was not discharged by any credit of the partner in the firm. So, also, in the case of Cheever v. Brown, supra, the receiver seems to have taken upon himself the burden of showing that the condition of the firm accounts would not satisfy the individual debt of the partner to the firm. Therefore, without definitely deciding the question, we think it wiser to remit the matter to the county court for proof as to the condition of the firm accounts. We do not intimate that it is necessary that a full account should be had between the partners, so as to definitely determine the account of each. It will be sufficient to show either that Smith has no credit on the partnership books, in which case his whole debt to the firm will be properly proved, or that such credit would not exceed some specified sum, in which case that sum will be deducted from the amount of his individual debt.

The decree, so far as appealed from, should be reversed, and the appellant adjudged to share in the assigned estate to the amount of his claim, with costs to the appellant payable out of the fund, and the matter should be remitted to the county court to ascertain the amount of any diminution or offset to the appellant's claim. All concur.