BURBANK (ASHTON v.). See Case No. 582.

## Case No. 2,137.

### BURBANK v. HAMMOND et al.

[3 Sumn. 429.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1838.

FRAUDULENT CONVEYANCES — NOTICE OF FRAUDULENT GRANTEE.

Burbank was the assignee of a mortgage, made by Josiah H. Hammond to Dresser, at Portland, on the 27th of July, 1835, of certain real estate in Massachusetts. This mortgage was put on record 28th of August, 1835. In the mean time, by a deed dated 18th August, and recorded 22d August, 1835, Josiah H. Hammond conveyed the premises to his brother, Stephen, absolutely, in fee. On the same 18th August, the following memorandum of agreement was signed by Josiah and Stephen: "The said Stephen agrees to hold a deed, in trust, of a certain portion of real estate in Roxbury, and to sell the same as soon as possible, and to pay to the order of Josiah all the debts, which were created in building the houses, as soon as the said Stephen shall receive pay for said houses; and to pay such other just demands as shall be presented." *Held*, that, under the circumstances, and notwithstanding the denials in the answers, Stephen had full notice of the mortgage to Dresser; that the deed to Stephen was not a conveyance bona fide to a purchaser for a valuable consideration, but a conveyance

[4] [From 5 N. B. R. 82.]
[1] [Reported by Charles Sumner, Esq.]

upon trust for the grantor, and to be executed, as he should direct, and countermandable at his will; and as against creditors and prior purchaser, fraudulent and void.

[In equity. Bill by David Burbank to annul an alleged fraudulent conveyance. Decree for complainant.]

The plaintiff was the assignee of a mortgage made by the defendant, Josiah H. Hammond, to Asa Dresser, on the 27th of July, 1835, of certain real estate in Roxbury, Massachusetts, which was then subject to a mortgage to one Caleb Parker, Jun. The mortgage to Dresser was to secure the payment of a promissory note for $3,063.62 in six months, with interest. It was recorded in the registry of deeds of Norfolk county, on the 28th of August, 1835. In the mean time, to wit, by a deed dated the 18th of the same month and year, Josiah H. Hammond conveyed the premises to his brother Stephen Hammond, absolutely, in fee, for the asserted consideration stated in the deed of $2,800, with covenants of general warranty. This deed was recorded in the registry on the 22d day of the same August, and of course before the prior deed to Dresser was recorded. On the same 18th of August, the following memorandum of agreement was signed by Josiah H. Hammond and Stephen Hammond. "This agreement made this eighteenth day of August, 1835, by and between Stephen Hammond and Josiah H. Hammond, both of Roxbury, county of Norfolk. Said Stephen Hammond agrees to hold a deed, in trust, of a certain portion of real estate in Roxbury, and to sell the same as soon as possible, and to pay to the order of Josiah H. Hammond all the debts which were created in building the houses, as soon as the said Stephen Hammond shall receive pay for said houses, and to pay such other just demands as shall be presented." The agreement was witnessed by Jonathan M. Warren, the brother-in-law of Josiah. This agreement was not put on record. The bill charged, that the deed to Stephen was fraudulent, with full notice of the mortgage to Dresser, and upon secret trusts in favor of Josiah H. Hammond. It sought for a discovery, and prayed that other and further security might be given by Josiah to the plaintiff, and for general relief.

The answer of Josiah H. Hammond admitted the intention on his part to give a priority to the deed to Stephen Hammond, in order to defeat the mortgage to Dresser, which, it asserted, was given upon a purchase of eastern lands, in which he was imposed upon and defrauded by Dresser; and that the plaintiff was a party to or had knowledge of the fraud, and was not a bona fide purchaser of the mortgage. Of these facts there was no proof. The answer then stated the mortgage to Parker, the building of houses on the lands, which, it asserted, were not paid for; but that debts were due to the workmen and to Stephen therefor. It further stated,

that on the 18th of August, Josiah, being desirous to remove from Roxbury, and Stephen owning half a farm in Rutland, subject to a mortgage of $250 and interest, and also another small tract of land in Rutland, and being desirous of a comfortable support of their parents and sister, entered into an agreement, (a copy of which was annexed to the answer,) that Stephen should sell Josiah those lands for $1,250, to be paid for in three years from October then next, Josiah agreeing to provide for and to take good care of their parents and sister, then residing on the farm, during their lives. It was then added to the agreement; "And if the said J. H. Hammond shall fail of the fulfilment of the payment of $1,250, this agreement shall be of none effect." It then proceeded to state that about the 18th of the same month, Josiah, being still greatly indebted to Stephen as aforesaid, and to other persons, about $4,000 for labor and supplies for the buildings, proposed and agreed with Stephen, to convey to him the houses and lands subject to the mortgage to Parker, upon trust, to hold as security for the amount due to Stephen, and to sell as soon as may be, and apply the proceeds, first to pay the workmen and others who had advanced labor and materials for the buildings; for which amounts, when ascertained and adjusted between them and Josiah, the latter was to draw orders on Stephen, to be by him accepted and paid; then to pay Josiah's debts to Stephen for advances, &c., and the residue, if any, to apply to the payment of sums due from Josiah to Stephen for the Rutland lands. The answer of Stephen asserted that he, in good faith and for the sake of obtaining payment of the sums due to him, agreed to accept such conveyance from Josiah, subject to Parker's mortgage, and upon the trusts aforesaid; and that in pursuance thereof, the conveyance was made to him on the 21st of August, 1835, and he caused it to be recorded on the 22d of the same month. He denied all notice and knowledge of the mortgage to Dresser. And Josiah also denied, that he ever communicated any information thereof to Stephen, until long after the execution of the conveyance to him. Stephen also said, that, after the making of the conveyance to him, he took possession of the premises, and expended divers sums of money thereon, and has been obliged to pay Parker interest on the mortgage to him, and taxes, of which he annexes an account. And he also stated, that he had adjusted some of the claims of the workmen, and had paid one order of Josiah, according to the trust. Both of the defendants admitted the written declaration of trust and agreement already referred to, as having been entered into at the time of their agreement, and of the conveyance to Stephen.

Mr. Greenleaf, for plaintiff.
Bartlett and Fletcher, for defendants.

STORY, Circuit Justice. The questions, arising in the case, are: (1.) Whether Stephen, at the time of the conveyance to him, had any notice of the mortgage to Dresser. If he had, it is perfectly clear, that he must be postponed to the claim of the plaintiff, as assignee of that mortgage. Notwithstanding the denials of the answer of both of the defendants, I am strongly disposed to believe, that Stephen had full notice. The very object of the conveyance to him, as avowed by Josiah, was to defeat the mortgage of Dresser, upon grounds, which must now be taken to be mere pretences. John M. Warren, the brother-in-law of Josiah, admits, that he knew of this mortgage, and that he told Josiah, that if he conveyed the estate, it ought to be to some one, who knew nothing about Dresser's claim upon it. And Warren asserts, that he was present, when the transaction took place between Stephen and Josiah. It is manifest, that it is a family concern; and the very nature of the trusts and circumstances of the case afford very strong presumptions, that all the parties present knew, or had reason to know, that the object was to defraud or to delay creditors. The trusts were secret and unavowed. The deed was absolute, with warranty. It was intended to hold out false lights to the public. The agreement respecting the Rutland estate has nothing to do with the case—so as to help the matter. Looking at the terms of the agreement, it would seem to be intended as a mere pretence and cover, and not as a bona fide transaction.

(2.) Whether the conveyance can be treated as a conveyance bona fide to a purchaser for a valuable consideration. There is no pretence to call it a purchase. It was a mere conveyance upon trust for the grantor. It is attempted to set up parol trusts beyond those stated in the written agreement of the 18th of August. But that is contrary to the statute of frauds of Massachusetts respecting trusts (act of 1783, c. 3, § 7), which on this point is substantially like the English statute of frauds of 29 Car. II. c. 3, §§ 7, 9. We must take the trusts, therefore, to be those, and those only, which are in the written agreement. What are they? Plainly, of the loose and most indefinite nature. The trusts are to sell the estates, and pay to the order of Josiah all the debts incurred for building the houses, and to pay such just demands as shall be presented. Not one word is said about any debts due to Stephen being specially paid; and no debts were to be paid, except by order of Josiah. It is plain, therefore, that the whole trusts were for the benefit of Josiah, controllable by him and recoverable by him. They were secret, undefined trusts, the effect of which was to lock up the property against all his creditors, and to enable him to defeat the mortgage of Dresser in particu-

lar. No creditors, as such, were parties to the deed; none could claim under it. It is clear, upon principle as well as upon authority, that trusts of this nature are countermandable at the mere will of the grantor. The cases of Wallwyn v. Coutts, 3 Mer. 707, 3 Sim. 14; Garrard v. Lord Lauderdale, 3 Sim. 6; and Acton v. Woodgate, 2 Mylne & K. 492, are directly in point. The case, then, must be taken exactly as if it were a subsequent conveyance of Josiah H. Hammond upon trusts for himself alone, and to be executed as he should direct. Under such circumstances, it is clear, that it cannot prevail against prior purchasers from him, or prior creditors of him. As to the expenditures of Stephen Hammond; they were all made after Dresser's mortgage was registered, of which by law Stephen must be presumed to have constructive notice,—at least from the time of the registration. My opinion is, that the deed to Stephen is fraudulent and void, and was originally designed to defraud creditors and prior purchasers. The plaintiff is at once a creditor and a purchaser in the sense of the rule. The conveyance ought to be declared to be null and void, as a fraud upon creditors and purchasers; and Stephen ought to be decreed to execute, in due form of law, a release of his title under the said conveyance to the plaintiff; and he, and his heirs and assigns, ought to be perpetually enjoined not to set up or assert against the plaintiff, or his heirs and assigns, any title thereto under the said conveyance.