.WOOLDRIDGE and others *v.* IRVING and others.

VALLEY NAT. BANK OF ST. LOUIS *v.* KLEIN and others.

*(Circuit Court, S. D. Mississippi.* November Term, 1884.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—RESERVATION OF EXEMPT PROPERTY
—PARTNERSHIP ASSIGNMENT.

Where an assignment by a firm in Mississippi excepts from the property con-
veyed such portion of it as is exempt by law from sale under execution, as
provided by the laws of that state, without designating what property is claimed,
and whether it is partnership property or individual property, the presumption
will be that the exemption was intended to be out of the individual property
of each partner, and the assignment will not be void.

2. SAME—ATTORNEY'S FEES.

A provision in an assignment that the assignee may, as part of the expenses
of executing the trust, pay necessary attorney's fees, will not invalidate the as-
signment, unless such fees are to be paid for defeating an attachment.

3. SAME—PAYMENT OF FIRM DEBTS—PAYMENT OF PARTNER'S DEBTS.

That the assignment appropriates all of the assets belonging to the firm and
to each individual member to the payment of the partnership debts, and, if
any shall remain, then the remainder, whether arising from the partnership
assets or that belonging to the individual members, to the payment of the in-
dividual debts of the assignors, will not render it void.

4. SAME—INTENT TO DEFRAUD CREDITORS.

On examination of the circumstances, as disclosed by the evidence in this
case, *held,* that the assignment was intended to defraud creditors, and was
fraudulent in fact.

5. SAME—POWER OF ASSIGNOR TO EXECUTE ASSIGNMENT.

It further appearing that the member of the banking firm who executed the
assignment in this case had no authority to do so, *held,* that it was void *in toto.*

In Equity.

*A. B. Pittman,* for S. L. Wooldridge and others.

*Catchings & Dabney, Buck & Clark,* and *H. C. McCabe,* for Valley
Nat. Bank.

*Martin Marshall* and *Miller, Smith & Hirsh,* for attaching creditors.

*Shelton & Crutcher, Birchut & Gillaud,* and *Nugent & McWillie,* for
assignee and assignors.

HILL, J.    These two causes are submitted together, upon bills, an-
swers, exhibits, and proofs; the purpose of both suits being to have
declared null and void, and canceled, an assignment and trust deed
executed by said G. M. Klein, in his own name, and in the name
of his father, said J. A. Klein, on the twenty-first day of November,
1883, upon the alleged grounds that said trust deed is—*First,* upon its
face, fraudulent and void; and, *secondly,* that it was executed with the
fraudulent purpose of hindering and delaying the creditors of said J.
A. and G. M. Klein, as bankers and copartners, and as individuals.
The answers deny the fraud charged, to which complainants have
filed replications, and upon which a large volume of testimony has
been taken and read upon the hearing, and will be referred to in con-
sidering the questions presented for decision.

The first question presented is as to whether or not the assignment, upon its face, contains any stipulations, which will, in law, render it fraudulent and void. This assignment is very lengthy, and was drawn by a lawyer, with unusual care, and in substance purposes to convey every species of property, rights, credits, and assets of every description, owned or possessed in any way by said J. A. and G. M. Klein, as bankers, doing business under the name and style of the "Mississippi Valley Bank," or otherwise, as partners, and of each of their individual property and assets of every description, wherever situated, to the defendant G. S. Irving, as trustee, who is by the assignment vested with the usual powers to sell the property and collect the assets of every kind; in a word, to reduce the entire property and assets into money, and, after the payment of the expenses of the trust, to first pay a very numerous class of preferred creditors, and then to pay those not preferred, if sufficient, and if not sufficient in either case, then to pay them ratably. The assignment provides that all the assets of the copartnership, and of its individual members, shall first be appropriated to the payment of the firm debts, and, if anything shall remain, then to apply the same to the payment of the individual claims against the said J. A. and G. M. Klein, whether arising from the firm assets, or those belonging to the individual members.

The clauses in the assignment which it is insisted render it void, are—*First*, that it excepts from the property conveyed such portion of it as is exempt by law from sale under execution, as provided by the laws of this state, without designating what property is claimed, and whether it is partnership or individual property. I have heretofore held that such a provision in an assignment of an insolvent debtor's property will render it void; and such has been the holding of the supreme court of Tennessee, and, since the decision made by me, of two or more courts of high authority; but as the supreme court of this state has held differently, I yield my own opinion to the better judgment of that court. Had the assignment excepted the exemptions out of the partnership property, I would hold it void; but it does not, and the presumption is that it was intended to be out of the individual property of each; therefore this objection is not well taken. The next objection is that it allows the assignee to pay, as part of the expenses of executing the trust, necessary attorney's fees. There is no objection to this, but I have held and still hold that in such assignments, if there is a provision to pay attorney's fees for defeating the attachment, it is an appropriation of the assets to pay the obligation of the assignor,—that being his suit alone,—and that such a provision will render the assignment void. But this assignment does not contain this provision, therefore this objection is not well taken. The third and last objection is that the assignment appropriates all of the assets belonging to the firm, and to each individual member, to the payment of the partnership debts, and, if any shall remain, then the remainder, whether arising from the partnership assets, or that be-

longing to the individual members, is to be applied to the payment of the individual debts of the assignors.

The assignment sets out with the declaration of the insolvency of the banking firm, but does not declare the insolvency of the members of the firm as individuals, apart from their individual liability for the debts arising by the firm. Had it provided that the firm assets should be applied to the payment of the individuals debts, without first satisfying the debts owing by the firm, I would hold the assignment fraudulent and void; but that is not the provision of this assignment. The provision is that after the partnership debts are satisfied, the residue, whether arising from partnership debts, or those belonging to the individual members, shall be applied to the payment of the debts against the individual members. If it is intended that the individual property of one member, or his share in the partnership assets, shall be, before the payment of his own debts, applied to the payment of the other, it would render the assignment fraudulent and void. This the assignee might do without violating the directions of the assignment, and is certainly a strong circumstance, taken in connection with other circumstances, tending to establish the fraudulent intent upon the part of G. M. Klein in making this conveyance; but I am not prepared to hold that it is sufficient to hold it void upon its face, therefore I cannot conclude that the conveyance contains, upon its face, sufficient provisions to render it fraudulent and void.

The next question is, was the assignment executed with the fraudulent purpose of hindering and delaying the creditors of the banking firm, or of either of its members? The proof shows that J. A. Klein, the senior partner of the firm, and father of G. M. Klein, had been in declining health for a number of years, and had for a year before the execution of the assignment become so imbecile of mind as not to be able to comprehend any business matters, and has since died without even knowing that his business had failed, or anything connected with it; and that the entire business of the firm and his individual business had been conducted by his son, said G. M. Klein,—so that if any fraud was committed it was done by G. M. Klein, who had a power of attorney, executed by his father before his mind became impaired, authorizing and empowering him to transact any business in his name, pertaining either to the business of the firm or of his private affairs; but no provision is made in it for making an assignment of the character of the one under consideration.

The proof also shows that G. M. Klein was engaged in quite a number of other business enterprises, of which he seems to have been a leading manager; that he had almost unlimited credit, and little or nothing was known of the embarrassed condition of the banking firm, or of any of the various enterprises in which G. M. Klein was engaged, until the day of his failure; that on the day before the assignment the bank received deposits amounting to over $90,000; that on that day he had a deed conveying to his mother two valuable store-houses, .

valued at $24,000, (which from its date, and the date of the acknowledgment, was executed about a year previously, but never put upon the public record,) then placed upon record; that the rents had been collected and credited upon the books of the bank in the name of the firm, or of J. A. and G. M. Klein, and that nothing was known by others than the parties to it, and the officer who took the acknowledgment; that such a conveyance had been executed, and it is not known that the officer knew the contents of the deed. On the same day J. A. Klein's account was charged with $20,000 for school warrants and other scrip; and also on the same day a credit for some $2,000, standing on the books of the bank to the credit of M. C. Klein, of North Carolina, a brother of G. M. Klein, was by him transferred to the credit of his mother; and on the same day he sold a tract of land to his mother; and on the next morning before the assignment was made he delivered to his mother $8,000 in warrants, etc. About 5 o'clock on the evening of the twentieth of November, he sent for his attorney, closed the doors of the bank, and all the employes in it went to work arranging for the assignment, which was completed, signed, and acknowledged before banking hours next morning. The defendant G. S. Irving was selected assignee. Mr. Irving was a customer of the bank, and was then indebted to it, and was a personal friend of the Messrs. Klein and family; the sureties upon his bond as assignee being the mother of Mr. Klein and other members of his family. When Klein applied to Irving to become his assignee, he remarked to him that he found that he could not meet paper then drawn upon him, and that he would make an assignment in which he would prefer his home creditors, and that he expected to arrange with the others, and rich creditors, on a basis of time. At the time of the assignment there was in the bank about $6,000 in warrants, which had been obtained from one Wolf, and for which a due bill had been given and was held by Wolf. After the assignment Klein gave the warrants back to Wolf, and took up or canceled the due bill. Also, after the assignment, he delivered to the attorney of Mr. Peyton, of Raymond, a note for about $5,000, belonging to his father; Peyton being a large creditor of the bank for deposits made, at interest, from time to time.

The mercantile firm of Ragan & Martin were large creditors of the bank; the last deposit by them having been made on the evening of the twentieth of November for a considerable sum. Ragan hearing of the failure of the bank became very much distressed, and importuned Klein to do something for him, in which he was aided by Mr. Andrews, a warm friend of Klein. Shortly afterwards Ragan & Martin were paid in money and warrants several thousand dollars, which Klein in his testimony stated that he obtained from his mother. He also testifies that since the failure he has paid to the destitute and needy home creditors some $15,000, which he also obtained from his mother. After the assignment was made, Klein made an assignment of an interest he had in certain railroad enterprises, upon which he placed a

high estimate, to Thomas Rigby, who held a large indebtedness against the bank. This assignment was antedated so as to show that it was made before the assignment to Irving, and was witnessed by his confidential friend.

The proof shows various other transactions made by G. M. Klein before and soon after the assignment to Irving, which need not be referred to in detail, which require explanation to establish their good faith. As soon as the failure was known to the citizens of Vicksburg, a very large number of all classes of whom were creditors of the bank, and of the Klein's individually, quite an excitement among them was created, and a committee was appointed to interview Klein, and to try to get him to do something for their relief. Of this committee Mr. A. Kuhn was chairman, or an active member, and he made an earnest application to Klein to do something for them. At the time of this interview Gen. Butts had been appointed receiver, and had possession of the assets. Klein was pressed to give a statement of the cause of the failure, and to give a statement of the assets of the bank and partners, which he promised to do, provided Butts, whom he considered as his enemy, was removed from the receivership, but that unless that was done he would make no disclosure of the assets and business; that in speaking of the matter he pointed to the sides of the house, and remarked that there were securities all around this house that no one knew anything about but himself, and would not, unless Butts was removed as receiver. Butts soon after resigned as receiver, but the statement has not been furnished his successor. Klein in his deposition explains that he meant that the securities were in the hands of banks and others, as collateral security for liabilities to them; but there is no proof that he has ever made a statement of them to the receiver, or discovered them in any way. Klein in his deposition endeavors to explain a number of the transactions stated, but the circumstances were certainly such as to cast a strong suspicion upon their fairness, and ought to be explained by all the proof within the control of the defendants sustaining the explanations attempted to be given by Klein, which has not been done; and the presumption is that the proof could not be had.

The proof further is that the liabilities, as shown by the books of the bank, are in all $1,147,908.32, and the nominal assets of all kinds, belonging either to the firm or the individual members, amount to about $400,000, out of which may be realized $200,000. For a considerable portion of the difference between the liabilities and the assets there is no satisfactory explanation; there may be a satisfactory reason, but it ought to be given.

The sole question is, do these circumstances, considered separately, or all taken together, establish a fraudulent purpose in G. M. Klein, in making this deed of assignment; or, if not, are its provisions such that the assignee cannot execute the trust imposed? These conveyances, like all others, are presumed to be executed with an honest

purpose, and this presumption stands until overcome by the proof. It is said that courts should be astute in finding reasons to sustain them; I suppose the meaning is that courts should be astute in ascertaining the truth. Mr. Klein, in his testimony, says he did not know of his embarrassed condition until the twentieth day of November,—the day before the assignment was made,— and that he did not then contemplate making the assignment until about 5 o'clock in the evening. It was his duty to have known his pecuniary condition long before that time, and it is passing strange that he did not do so. Whether he contemplated making the assignment before the time stated by him or not, the arrangements made on that day to secure his family, by placing the deed to the town lots and improvements thereon on record, and the other provisions for his family, go far to establish the fact that some steps were to be taken without delay, or they would suffer loss. There is no reason given why these steps were not taken before that time.

The secrecy which was observed in preparing and executing the assignment is another circumstance going to show the purpose of the transfer. That G. M. Klein had no power to execute the assignment in the name of his father, and that, so far as that part of the assignment is concerned, it was not binding on him in his life-time, or those claiming after him, and is not binding on his individual creditors, is apparent—*First*, for want of power in the power of attorney; and, *secondly*, because the power of attorney was revoked by the insanity of J. A. Klein, the maker, and which insanity was well known to G. M. Klein when he executed the assignment, and which had been carefully concealed by him from the business public. The effect of this want of power to execute the assignment, if there was nothing more, in my opinion, renders the conveyance void, as it will be impossible for the assignee to execute the trust imposed in all such instruments, the conveyance itself being the only guide for the assignee. The establishment of this want of power is necessarily done by proof outside of the face of the assignment, and could not be considered when determining its validity or invalidity upon its face. And if the conveyance were not invalid for this reason, I am satisfied that, considering the occurrences upon the day before the assignment was executed, on that day, and on the subsequent days, as shown by the evidence, it cannot be maintained that the conveyance was made with the sole purpose of having all the property and assets, purported to be conveyed honestly and fairly, applied to the payment of the debts due by the firm and its members. This position is greatly strengthened by the fact that no statement has ever been made of the collaterals claimed to be held by distant creditors, the refusal to disclose which only upon condition of Butts' removal was not consistent with good faith to his creditors; and, had it been so, the failure to disclose them to his successor is unexplained. Therefore, for the reasons stated, I am brought to the conclusion—*First*, that the assignment is fraudu-

lent in fact; and, *secondly*, that it is void as to J. A. Klein, and is incapable of execution, and therefore void *in toto*.

A decree will be entered in each cause declaring the assignment null and void, and for its cancellation.

---

How Executed. Under the New York law a general assignment should be executed and acknowledged by all the members of the firm the same as a deed of real estate, otherwise it is void and inoperative.[1] Where an assignment is made in another state, if valid there, is valid here.[2] A partner who has withdrawn from the firm need not join in the assignment by the firm.[3]

Dissolution of Partnership. If partners dissolve the partnership in good faith, and divide the partnership assets among themselves,[4] or transfer them all to one partner,[5] after such transfer a partner may use the assets to pay his individual debts, without being a violation of the rights of partnership creditors.[6] A dissolution and division of assets among partners is not in itself fraudulent, although the object is to prevent individual creditors of one partner from levying on partnership property;[7] but if the effect is to delay, hinder, or defraud individual creditors of one partner, it is void.[8] If a dissolution is not made in good faith, but to divert partnership assets from partnership creditors to individual creditors, it is fraudulent, and partnership creditors are entitled to priority out of the assets,[9] even though the transfer was to pay individual debts.[10] In such case the insolvency of the partnership may be considered, in determining whether the dissolution was in good faith or not.[11] On dissolution of the partnership, the firm creditors have the right to have partnership property applied to the payment of the partnership debts in preference to those of the individual partner;[12] and this right cannot be impaired by any consideration with reference to the amount of capital contributed by each individual partner;[13] and debts contracted in the name of one partner may be shown to be in reality partnership debts;[14] but where such debt was incurred by consent or privity of the other partner, proof of joint creditors against the separate estate, in competition with the separate credit-

[1] In re Lawrence, 5 Fed. Rep. 349; Smith v. Tim, 14 Abb. N. C. 447.

[2] In re Paige & S. L. Co. 31 Minn. 136; S. C. 16 N. W. Rep. 700.

[3] First Nat. Bank v. Hinman, 21 N. W. Rep. 280; Same v. Rock River Paper Co. Id. 280.

[4] Case v. Beauregard, 99 U. S. 119; Allen v. Center Valley Co. 21 Conn. 130; Kimball v. Thompson, 54 Mass. 283.

[5] Ladd v. Griswold, 9 Ill. 25; Howe v. Lawrence, 63 Mass. 553; Robb v. Mudge, 80 Mass. 534; Shirner v. Huber, 19 N. B. R. 414; McNutt v. Strayhorn, 39 Pa. St. 269; Smith v. Edwards, 7 Humph. 106.

[6] Case v. Beauregard, 99 U. S. 119; Hapgood v. Cornwell, 48 Ill. 68; Goembel v. Arnett, 100 Ill. 34; Armstrong v. Fahnestock, 19 Md. 58; Pfroman v. Koch, 1 N. Y. 460; Sage v. Chollar, 21 Barb. 596; Dimon v. Hazard, 32 N. Y. 65; Wilcox v. Kellogg, 11 Ohio, 394; Baker's Appeal, 21 Pa. St. 76; Bullitt v. Chartered Fund, 26 Pa. St. 108.

[7] Atkins v. Saxton, 77 N. Y. 195.

[8] Burrill v. Lawry, 18 N. B. R. 367; Weaver v. Ashcroft, 50 Tex. 427.

[9] In re Cook, 3 Biss. 122; Collins v. Hood, 4 McLean, 186; In re Byrne, 1 N. B. R. 464; In re Tomes, 19 N. B. R. 36.

[10] Tracy v. Walker, 1 Flippin, 41; Collins v. Hood, 4 McLean, 186; Sanderson v. Stockdale, 11 Md. 563; Flack v. Charron, 29 Md. 311; Phelps v. McNeely, 66 Mo. 554; Ferson v. Monroe, 21 N. H. 462.

[11] Frank v. Peters, 9 Ind. 344; Shemer v. Huber, 19 N. B. R. 414.

[12] Case v. Beauregard, 99 U. S. 119; Evans v. Winston, 74 Ala. 349; Warren v. Taylor, 60 Ala. 218.

[13] Wilson v. Robertson, 21 N. Y. 587.

[14] Cox v. Platt, 32 Barb. 126; Read v. Baylies, 35 Mass. 497; Marks v. Hill, 15 Grat. 400; Barcroft v. Snodgrass, 1 Cold. 430; Siegel v. Chidsey, 28 Pa. St. 279; Gwin v. Sedley, 5 Ohio St. 96; Haben v. Henshaw, 49 Wis. 379; Schaeffer v. Fithian, 17 Ind. 463; Wait v. Bull's Head Bank, 19 N. B. R. 500.

ors, will not be admitted.[1] An assignment by one partner of a firm operates as a dissolution of the partnership.[2]

VALIDITY OF PARTNERSHIP ASSIGNMENT. Where a voluntary assignment of partnership property was made in trust for the payment of all partnership debts that should be proved "as provided by statute," and afterwards for the payment of individual debts, it contains no unlawful preference.[3] If property is purchased in the firm name with assets of a prior firm, a transfer of part or all of it, to secure a creditor of the prior firm, is valid.[4] A debtor may prefer creditors if he make no reservation for his own benefit to the injury of creditors unprovided for.[5] At common law an insolvent may make an assignment in trust for the benefit of his creditors, and may give a preference to *bona fide* creditors.[6] If the sole purpose of the maker be to discharge an honest debt, the deed is not fraudulent.[7] A deed which gives a preference to his sureties to prevent one creditor from obtaining full satisfaction to the injury of other creditors is not fraudulent.[8] An insolvent debtor, making an assignment of all his property, may devote his individual property primarily to the payment of his individual debts.[9] A sale by one partner of an insolvent partnership of his individual property, to secure an antecedent personal debt, is not fraudulent;[10] and an assignment made after execution of an assignment of the firm property is not void because there is no provision for payment of debts fully provided for in the firm assignment;[11] but a preference of individual debts of a partner in an assignment by the firm is void.[12] A transfer of separate property, in consideration of a debt due by the firm, is founded on a good consideration.[13] A deed may be valid as to *bona fide* debts and void as to fraudulent and fictitious debts.[14] The validity of an assignment is to be determined by the intent of the assignor, and his contemporaneous fraudulent acts are evidence of such intent.[15] A debtor may pay or secure a creditor or number of creditors where no statute forbids it.[16] An assignment, which does not purport to pass the title owned by the partnership making it as well as the individual property not exempt from forced sale, and owned by the individuals of the firm, cannot be sustained.[17]

ASSIGNMENT BY ONE PARTNER. If the partnership is dissolved in good faith, and one partner takes the property and assumes the firm debts, he may subsequently assign the same for payment of his individual debts,[18] or the debts due creditors of any new firm of which he may become a member.[19] The surviving partner of an insolvent firm may make an equitable and just assignment of partnership effects for the equal benefit of all the firm creditors; but as trustee he is not permitted to assign and give a preference to certain creditors.[20] One of two partners, with consent of the other, may make an as-

[1] In re Lloyd, 22 Fed. Rep. 91; In re McEwen, 12 N. B. R. 11; In re McLean, 15 N. B. R. 333; In re May, 19 N. B. R. 101.
[2] Conrad v. Buck, 21 West Va. 396.
[3] Bradley v. Kroft, 19 Fed. Rep. 295.
[4] Day v. Wetherby, 29 Wis. 363.
[5] Guggenheimer v. Brookfield, 90 N. C. 232.
[6] Means v. Montgomery, 23 Fed. Rep. 421.
[7] Moore v. Hinnant, 89 N. C. 455; Hafner v. Irwin, 1 Ired. Law, 490.
[8] Means v. Montgomery, 23 Fed. Rep. 421; Reed v. McIntyre, 98 U. S. 511.
[9] Evans v. Winston, 74 Ala. 349; Bank of Mobile v. Dunn, 67 Ala. 381.
[10] Schoverling v. Kovar, 15 Neb. 306.
[11] Bogert v. Haight, 9 Paige, 297.
[12] Schiele v. Healy, 10 Daly, 92; Vernon v. Upson, 60 Wis. 418; Willis v. Bremner, 60 Wis. 622.
[13] Stewart v. Slater, 6 Duer, 83.
[14] Market Nat. Bank v. Hofheimer, 23 Fed. Rep. 13.
[15] Adler v. Ecker, 2 Fed. Rep. 126.
[16] Carter v. Rewey, 22 N. W. Rep. 129; Anstedt v. Bentley, 21 N. W. Rep. 807; Lucas v. Clafflin, 76 Va. 269.
[17] Coffin v. Douglass, 61 Tex. 406; Donoho v. Fish, 58 Tex. 164.
[18] Robb v. Stevens, Clarke, 192; Marsh v. Bennett, 5 McLean, 117; Price v. De Ford, 18 Md. 489; Yearsley's Estate, 1 Amer. L. Reg. 636. See Heye v. Bolles, 2 Daly, 231.
[19] Smith v. Howard, 20 How. Pr. 121.
[20] Salsbury v. Ellison, 7 Colo. 167.

signment; and, the partner absconding, consent will be implied.[1] A partner who has not joined in an assignment of the firm assets may thereafter ratify the same, and a creditor may not question its validity because of his non-joinder;[2] but where one partner takes the firm assets and agrees to pay the firm debts, the partnership creditors may prove against his estate, and share *pari passu* with the separate creditors.[3] As a separate creditor cannot be injured by a transfer of one partner's interest in the partnership property to his copartner, in consideration of the grantee assuming the liability of the firm.[4]

WHEN FRAUDULENT. An assignment which does not declare the uses, but reserves to the assignor to subsequently do so, is fraudulent and void;[5] it is a fraud on the creditors, as it must necessarily hinder and delay.[6] Where a deed conveyed integral amounts to a series of integer creditors, and its provisions were several, and does not provide for the contingency of some of the debts being fictitious, which they in fact proved to be, the amounts intended for them, not disposed of by the deed, remained in the grantor as to assailing creditors, and subject to their lien.[7] It is absolutely necessary that the equitable interests in the assigned property shall be fixed and determined by the assignment itself;[8] so the reservation of his right to determine the preferences at some future time renders it void.[9] An attempt to assign partnership property for the purpose of paying the private debts of one of the partners, when the firm is insolvent, is conclusive of an actual fraudulent design;[10] but it has been held that the assignment is valid though the appropriation is void.[11] When a power of revocation is reserved, the necessary inference is that it is made with intent to hinder, delay, or defraud creditors; for its only effect is to mask the property,[12] even though only to be exercised in case any creditor refuses to assent to the assignment.[13] A power to make loans on the security of the estate is equivalent to a power of revocation.[14] A reservation in a chattel mortgage of the right to dispose of the goods, is void with respect to creditors;[15] and possession thereunder gives mortgagee no rights as against the mortgagor's creditors.[16] A firm, in law, is distinct from the members who compose it, and a transfer of firm property to pay the separate debts of one partner is a voluntary conveyance; and where

[1] Sullivan v. Smith, 15 Neb. 476; S. C. 19 N. W. Rep. 620.

[2] Adee v. Cornell, 93 N. Y. 572.

[3] In re Lloyd, 22 Fed. Rep. 90. See Smith v. Spencer, 73 Ala. 299.

[4] Griffin v. Cranston, 10 Bosw. 1; S. C. 1 Bosw. 281.

[5] Harvey v. Mix, 24 Conn. 406; Burbank v. Hammond, 3 Sum. 429; Grover v. Wakeman, 11 Wend. 203. See Sheldon v. Dodge, 4 Denio, 217. Strong v. Skinner, 4 Barb. 546; Moody v. Paschal, 60 Tex. 483.

[6] Boardman v. Halliday, 10 Paige, 223; Barnum v. Hempstead, 7 Paige, 568; Gazzam v. Poyntz, 4 Ala. 374.

[7] Market Nat. Bank v. Hofheimer, 23 Fed. Rep. 13.

[8] Averill v. Loucks, 6 Barb. 470; Mitchell v. Stiles, 13 Pa. St. 306.

[9] Averill v. Loucks, 6 Barb. 470.

[10] Keith v. Fink, 47 Ill. 272; French v. Lovejoy, 12 N. H. 458; Hurlbert v. Dean, 2 Abb. App. 428; Kirby v. Shoonmaker, 3 Barb. Ch. 46; Cox v. Platt, 23 Barb. 126; Knauth v. Bassett, 34 Barb. 31; Ruhl v. Phillips, 2 Daly, 45; Lester v. Abbott, 28 How. Pr. 488; Heye v. Bolles, 33 How. Pr.

266; Wilson v. Robertson, 21 N. Y. 587; Henderson v. Haddon, 12 Rich. Eq. 393.

[11] Read v. Baylies, 35 Mass. 497; Nye v. Van Husan, 6 Mich. 329; Kemp v. Carnley, 3 Duer; 1; Nicholson v. Leavitt, 4 Sandf. 252; 6 N. Y. 510; 10 N. Y. 591; Lassell v. Tucker, 5 Sneed, 1; McCullough v. Sommeryville, 8 Leigh, 415; Gordon v. Cannon, 18 Grat. 387.

[12] Cannon v. Peebles, 4 Ired. Law, 204; Murray v. Riggs, 15 Johns. 571; S. C. 2 Johns. Ch. 565.

[13] Hyslop v. Clarke, 14 Johns. 458.

[14] Sheppards v. Turpin, 3 Gratt. 373.

[15] Wells v. Langbein, 20 Fed. Rep. 183; Crooks v. Stuart, 7 Fed. Rep. 801; Robinson v. Elliott, 22 Wall. 513; Meyer v. Gage, 22 N. W. Rep. 892; Leeser v. Glaser, 4 Pac. Rep. 1026; Speigelberg v. Hersch, 4 Pac. Rep. 705.

[16] Wells v. Langbein, 20 Fed. Rep. 183; Chenery v. Palmer. 6 Cal. 123; Delaware v. Ensign, 21 Barb. 85; Stein v. Munch, 24 Minn. 390; Dutcher v. Swartwood, 15 Hun, 31; Parshall v. Eggert, 54 N. Y. 18; Blakeslee v. Rossman, 43 Wis. 116.

the firm is insolvent, it is void[1] as to creditors, and a previous division of the property will not alter the rule.[2]

FRAUD MUST BE PROVED. The question whether a conveyance is made to defraud creditors in the first instance, is a question of fact,[3] to be determined from all the facts and circumstances,[4] and must be proved when the deed is alleged to be fraudulent.[5] Fraudulent intent is generally a question of fact for the jury, and not for the court.[6] It is never presumed when fairly reconcilable with honesty.[7] The burden of proof is upon the party attacking the deed, to establish a fraudulent intent;[8] it is on him who seeks to set aside the legal title.[9]

RESERVATION, WHEN FRAUDULENT. A debtor in failing circumstances cannot convey his property in trust and reserve to himself any benefit;[10] such a reservation renders the assignment null, void, and of no effect,[11] if made to the exclusion of his creditors;[12] but the reservation of a secret benefit does not necessarily render such conveyance fraudulent as to creditors.[13] There is a distinction between an express trust for the debtor and a benefit which is merely incidental to a trust created for another object.[14] To render a deed of trust fraudulent, as matter of law, there must appear upon its face some express provision for the personal benefit of the grantor, or a stipulation wholly irreconcilable with an honest and legal purpose of paying his debts within a reasonable time.[15] The debtor must part with his property free from any control over or interference with it, and from any contingency on which he may resume it at pleasure.[16] An assignment differs from a mere security in passing both the legal and equitable title to the assignee absolutely, leaving no equity of redemption.[17] Where the consideration expressed is far below the value of the property, as known to both parties, it is a strong circumstance to show fraud.[18] He cannot, under pretense of paying his debt, assign more property than reasonably sufficient for the purpose.[19] Where the assignment covers a great deal of property as security for a small amount of debts, so that the resulting interest of the debtor is really the valuable consideration, and the purpose professed is so obviously a mere pretense as not to conceal

---

[1] Geortner v. Canajoharie, 2 Barb. 625; Burtus v. Tisdall, 4 Barb. 571; Dart v. Farmers' Bank, 27 Barb. 337; Walsh v. Kelly, 42 Barb. 98; S. C. 27 How. Pr. 359 Elliot v. Stevens, 38 N. H. 311; Ferson v. Monroe, 21 N. H. 462; Wilson v. Robertson, 21 N. Y. 587; Hartley v. White, 91 Pa. St. 31. But see Schaeffer v. Fithian, 17 Ind. 463; McDonald v. Beach, 2 Blackf. 55; Schmidlapp v. Currie, 55 Miss. 597; National Bank v. Sprague, 20 N. J. Eq. 13; Sigler v. Knox Co. Bank, 8 Ohio St. 511.

[2] Burtus v. Tisdall, 4 Barb. 571.

[3] Howe Mach. Co. v. Claybourn, 6 Fed. Rep. 438; Spaer v. Rood, 51 Mich. 140.

[4] Morse v. Riblet, 22 Fed. Rep. 501; Livesay's Ex'r v. Beard, 22 West Va. 585.

[5] Davis v. Kennedy, 105 Ill. 300.

[6] Evans v. Rugee, 23 N. W. Rep. 24; Hyde v. Chapman, 33 Wis. 392; Barkow v. Sanger, 47 Wis. 501; Mehlhop v. Pettibone, 54 Wis. 656; Green v. Dixon, 22 N. W. Rep. 943.

[7] Mey v. Gulliman, 105 Ill. 272.

[8] Means v. Montgomery, 23 Fed. Rep. 421; Maish v. Bird, 22 Fed. Rep. 576; Tebbs v. Lee, 76 Gratt. 744; Clemens v. Brillhart, 22 N. W. Rep. 779; Long v. Wert, 1 Pac. Rep. 545; First Nat. Bank v. Buck, 23 N. W. Rep. 57.

[9] Adams v. Ryan, 61 Iowa, 733.

[10] Kellog v. Richardson, 19 Fed. Rep. 71.

[11] Lawrence v. Norton, 15 Fed. Rep. 853; Baldwin v. Peet, 22 Tex. 708; Bailey v. Mills, 27 Tex. 434; Barney v. Griffin, 2 N. Y. 365; Leitch v. Hollister, 4 N. Y. 211.

[12] Muller v. Norton, 19 Fed. Rep. 719; Lawrence v. Norton, 15 Fed. Rep. 853.

[13] Howe Mach. Co. v. Claybourn, 6 Fed. Rep. 438.

[14] Curtis v. Leavitt, 15 N. Y. 9; Van Buskirk v. Warren, 34 Barb. 457.

[15] Means v. Montgomery, 23 Fed. Rep. 421; McCormick v. Atkinson, 78 Va. 8.

[16] Whallon v. Scott, 10 Watts, 237. See Planters' & M. Bank v. Clarke, 7 Ala. 765; Dana v. Bank of U. S. 5 Watts & S. 223; Hafner v. Irwin, 1 Ired. Law, 490; Janney v. Barnes, 11 Leigh, 100; Sheppards v. Turpin, 3 Grat. 373.

[17] Martin v. Hausman, 14 Fed. Rep. 160; State v. Benoist, 37 Mo. 500; Gale v. Mensing, 20 Mo. 461; Livesay's Ex'r v. Beard, 22 West Va. 585.

[18] Bartles v. Gibson, 17 Fed. Rep. 293.

[19] McNichols v. Rubelman, 13 Mo. App. 515.

the true purpose, the debtor is obviously providing for himself and not for his creditors.[1] Where he conveys property on consideration of his maintenance and support, the conveyance is fraudulent and void as to creditors if any part of the consideration is to be paid in the future support of the grantor;[2] such conveyance will not be protected although full consideration was paid.[3]

PROVISIONS UNAUTHORIZED BY LAW. Any stipulation in an assignment intended to hinder or delay non-assenting creditors, if not warranted by law, is null and void.[4] Provisions beyond the limits of the power which the law allows to be vested in the assignee, render the assignment void.[5] An assignment which authorizes the assignee to dispose of the property in a way not authorized by law is void.[6] So a deed is void which requires the assignee to sell choses in action before the lapse of time sufficient to enable him to collect by legal procedure.[7] Unless authorized by law, a provision which authorizes the assignees in their discretion to dispose of the property on credit, vitiates the assignment,[8] and is a badge of fraud;[9] so an attempt to hinder and delay all creditors, even if there is no attempt to prefer any, is unauthorized by law.[10] An assignment which attempts to confer on the assignee power to declare future preferences in his discretion is void;[11] but a conveyance to the assignee and his successors, which merely refers to such person as may lawfully succeed him in case of resignation, removal, or death, is not void.[12]

CONDITIONS IN. A deed stipulating that no creditor shall participate in the proceeds of the property unless he accepts the same in full·satisfaction of his debt is valid; but to be valid, all the debtor's property must be conveyed.[13] Where a participation in the assets depends upon the release of a balance due, and there is no provision for distribution of the surplus, it is *per se* fraudulent and void;[14] and non-assenting creditors, not present when the deed was executed, are not bound by such an agreement of release.[15]

WHEN NOT FRAUDULENT. The mere fact that an assignment was voluntary and without consideration, will not support a finding that it was fraudulent;[16] the *onus* is on the grantee to prove a valuable consideration,—recitals are not evidence in his favor.[17] Where the deed was made on a fair consideration it is not necessarily void;[18] but the motive or purpose is not material.[19] A conveyance is not necessarily fraudulent because its effect is to hinder and delay, unless there was a contrivance for that purpose, and the grantee par-

[1] Moore v. Collins, 3 Dev. 126; Beck v. Burdett, 1 Paige, 305; Hastings v. Baldwin, 17 Mass. 552.

[2] Lawson v. Funk, 108 Ill. 502. A provision for future support made in good faith will not render the conveyance fraudulent, Barnett v. Knight, 3 Pac. Rep. 747; but the grantee may be held for the excess of the land over the consideration actually paid, Farlin v. Sook, 1 Pac. Rep. 123.

[3] Buck v. Voreis, 89 Ind. 116.

[4] Muller v. Norton, 19 Fed. Rep. 719; Jaffray v. McGehee, 2 Sup. Ct. Rep. 367; Keevil v. Donaldson, 20 Kans. 168; Bryan v. Sundberg, 5 Tex. 423; Donoho v. Fish, 58 Tex. 167.

[5] Rapalee v. Stewart, 27 N. Y. 310; Bagley v. Bowe, 50 N. Y. Super. Ct. 100.

[6] Schoolfield v. Johnson, 11 Fed. Rep. 297; Bartlett v. Teah, 1 Fed. Rep. 768; Sumner v. Hicks, 2 Black, 532; McCleery v. Allen, 7 Neb. 21; Rapalee v. Stewart, 27 N. Y. 310; Woodburn v. Mosher, 9 Barb. 255; Keep v. Sanderson, 12 Wis. 391.

[7] Richardson v. Stapleton, 60 Miss. 97; distinguished in Wickham v. Green, 61 Miss. 463.

[8] Muller v. Norton, 19 Fed. Rep. 720; Lawrence v. Norton, 15 Fed. Rep. 853; Moir v. Brown, 14 Barb. 39; Schufeldt v. Abernethy, 2 Duer, 533; Rapalee v. Stewart, 27 N. Y. 311; Hutchinson v. Lord, 1 Wis. 286; Keep v. Sanderson, 2 Wis. 42.

[9] Carlton v. Baldwin, 22 Tex. 731; Livesay's Ex'r v. Beard, 22 West Va. 585.

[10] Malvin v. Wert, 19 Fed. Rep. 721.

[11] Moody v. Paschal, 60 Tex. 483.

[12] Langdon v. Thompson, 25 Minn. 509.

[13] Dodd v. Martin, 15 Fed. Rep. 338; Clayton v. Johnson, 36 Ark. 406.

[14] Seale v. Vaiden, 10 Fed. Rep. 831.

[15] Id.

[16] Genesee River Nat. Bank v. Mead, 92 N. Y. 637; George v. Kimball, 41 Mass. 234; Spear v. Rood, 51 Mich. 140.

[17] Zelnicker v. Brigham, 74 Ala. 598.

[18] McCanless v. Flinchum, 89 N. C. 373.

[19] Goodman v. Wineland, 61 Md. 449.

ticipated in the design.[1] To render a deed founded on a valuable consideration void for fraud, both parties must concur in a fraudulent intent, or the grantee must have notice of such intent, or be in some way privy thereto.[2] The grantee with knowledge of the fraudulent intent makes himself a party to the fraud;[3] so a mortgage which purposely exaggerates the mortgagee's demand, if known to him, is void as to creditors,[4] even if given for full value.[5] So, if grantee has knowledge of facts sufficient to excite the suspicion of a prudent man and put him on inquiry, he is a party to the fraud;[6] but an assignee is not affected by the fraud of the assignor unless he co-operated or took with knowledge of the fraud.[7] If the provisions of the deed manifest a real purpose to satisfy *bona fide* creditors in a reasonable time, with no unlawful intent towards other creditors, and without any substantial benefit to the grantor, no presumption of fraud arises from a provision for the retention of the possession, with power of disposition of the property by the grantor.[8] If not fraudulent at its inception, it is not invalidated by subsequent delinquencies of the assignee;[9] and subsequent acts of the debtor, or continuance of the business, is not proof of fraudulent intent.[10]

RESERVATIONS VALID. An exception in the conveyance, whereby the property is retained by the debtor and not conveyed to the assignee, is not a reservation of a benefit to the debtor, and does not vitiate the assignment.[11] A declaration that notes are accommodation notes, and providing for their return to the maker, will not justify an inference of fraud.[12] Unless the assignment is merely colorable, and made for the sake of the resulting trust, it is not void.[13] Where one partner, with the consent of his copartner, assigns his individual estate and partnership assets to pay his private debts, there may be a reservation in favor of such copartner of a sum equal to his interest.[14] A reservation to the debtor of what is left after payment of *all* his debts is proper,[15] as what remains belongs to him by operation of law.[16] The rule that there must be no provision for the benefit of the debtor does not apply to sales. A stipulation to take notes for part of the purchase money simply relates to the manner the property should be paid for by the purchaser.[17]

EXEMPT PROPERTY. Whatever is exempt from execution may be reserved to the debtor;[18] and an express reservation of such property does not render

[1] Daniel v. Vaccaro, 41 Ark. 316.

[2] Means v. Montgomery, 23 Fed. Rep. 422.

[3] Bartles v. Gibson, 17 Fed. Rep. 293.

[4] Stinson v. Hawkins, 16 Fed. Rep. 850.

[5] Stinson v. Hawkins, 13 Fed. Rep. 833.

[6] Bartles v. Gibson, 17 Fed. Rep. 297; Atwood v. Impson, 20 N. J. Eq. 156; Baker v. Bliss, 39 N. Y. 70; Parker v. Conner, 93 N. Y. 118; Avery v. Johann, 27 Wis. 251; David v. Birchard, 53 Wis. 492; S. C. 10 N. W. Rep. 557. See Kaine v. Weigley, 22 Pa. St. 179.

[7] Cannon v. Young, 89 N. C. 264.

[8] Means v. Montgomery, 23 Fed. Rep. 421.

[9] Olney v. Tanner, 10 Fed. Rep. 101; Hardmann v. Bowen, 39 N. Y. 200.

[10] Olney v. Tanner, 10 Fed. Rep. 101.

[11] Moss v. Humphrey, 4 Greene, (Iowa,) 443; Dodd v. Hills, 21 Kan. 707; Bank v. Cox, 6 Me. 395; Ingraham v. Grigg, 21 Miss. 22; In re Walker, 18 N. B. R. 56; Carpenter v. Underwood, 19 N. Y. 520; Knight v. Waterman, 36 Pa. St. 258; Spencer v. Jackson, 2 R. I. 35; Baldwin v. Peet, 22 Tex. 708; Bates v. Ableman, 13 Wis. 644. See Foster v. Libby, 24 Me. 448.

[12] Price v. De Ford, 18 Md. 489.

[13] Wilkes v. Ferris, 5 Johns. 335.

[14] Mandel v. Peay, 20 Ark. 325.

[15] Sangston v. Gaither, 3 Md. 40; Beatty v. Davis, 9 Gill, 211; Wintringham v. Lafoy, 7 Cow. 735; Lindsay v. Guy, 57 Wis. 200.

[16] Cross v. Bryant, 3 Ill. 36; Finlay v. Dickerson, 29 Ill. 9; Hollister v. Loud, 2 Mich. 309; Robins v. Embry, 1 Smedes & M. Ch. 207; Van Rossum v. Walker, 11 Barb. 237; Ely v. Cook, 18 Barb. 612; Gibson v. Walker, 11 Ired. Law, 327; Hoffman v. Mackall, 5 Ohio St. 124; In re Potter, 54 Pa. St. 465; Van Hook v. Walton, 28 Tex. 59; Farquharson v. McDonald, 2 Heisk. 404; Hall v. Denison, 17 Vt. 310.

[17] Beach v. Bestor, 47 Ill. 521.

[18] Garnor v. Frederick, 18 Ind. 507; Hollister v. Loud, 2 Mich. 309; Brooks v. Nichols, 17 Mich. 38; Smith v. Mitchell, 12 Mich. 180; Richardson v. Marqueze, 59 Miss. 80; Dow v. Platner, 16 N. Y. 562; Mulford v. Shirk, 26 Pa. St. 473; Heck-

the assignment void, as creditors are not hindered or delayed thereby.[1]   He cannot except from his general assignment property exempt from execution, when at the time of the assignment there were judgments against him in which he has waived the benefit of the exemption laws.[2]   So the right to claim the benefit of the exemption law may be waived by laches.[3]   The claim must be made with such promptness as to occasion no delay to the one about to sell it.[4]   It is too late to claim the exemption after all the property is sold, the proceeds paid out in satisfaction of debts, and the assignee about to file his account.[5]   An assignment is not void which excepts property exempt by law.[6] So the reservation of exempt property in an assignment by a firm will not invalidate the assignment.[7]   There is no obligation on the part of an assignor to make any selection of a homestead claimed by him as exempt;[8] and the mere failure to claim the exemption until the morning preceding the sale will not waive the right.[9]   A merchant tailor, the head of a family and resident of the state, may exempt portions of his stock, as he may select, up to the statute limitation as to value;[10] but if the reservation of what may be exempt by law gives the debtor the right to select the article, the assignment is void, as the assignee has no certain claim until selection is made.[11]

RESERVATION OF SURPLUS.   An express reservation to the debtor of the surplus remaining after payment of the debts or execution of the trust is not, as matter of law, fraudulent and void, as to creditors not provided for,[12] it raises no presumption of fraud;[13] it is merely what the law would provide without the declaration, and does not interfere with, or vitiate the transfer.[14]   The doctrine that the reserve of the surplus renders the deed void, is placed on the ground that the effect is to lock up the property until the creditors provided for in the assignment are paid;[15] and other creditors could not sue the interest of the debtor, subject to the assignment, as they could if it were a mortgage;[16] but the opposite doctrine is held in other cases.[17]   The assignor's inter-

man v. Messinger, 49 Pa. St. 465; Sugg v. Tillman, 2 Swan, 208; McCord v. Moore, 5 Heisk. 734; Farquharson v. McDonald, 2 Heisk. 404; Overton v. Holinshade, 5 Heisk. 683.

[1] Hildebrand v. Bowman, 100 Pa. St. 580.

[2] Shaeffer's Appeal, 101 Pa. St. 45.

[3] Chilcoat's Appeal, 101 Pa. St. 22.

[4] Shaeffer's Appeal, 101 Pa. St. 45; Bowyer's Appeal, 21 Pa. St. 210; Davis' Appeal, 34 Pa. St. 256; Morris v. Shafer, 93 Pa. St. 489.

[5] Chilcoat's Appeal, 101 Pa. St. 22.

[6] Bates v. Simmons, 22 N. W. Rep. 335, First Nat. Bank v. Hinman, 21 N. W. Rep. 280.

[7] McNair v. Rewey, 22 N. W. Rep. 339; following First Nat. Bank v. Hinman, 21 N. W. Rep. 280, and Goll v. Hubbell, 20 N. W. Rep. 674, and 21 N. W. Rep. 288.

[8] Batton v. Smith, 22 N. W. Rep. 342.

[9] Rice v. Nolan, 5 Pac. Rep. 437.

[10] Id.

[11] Clark v. Robbins, 8 Kan. 574.

[12] Knapp v. McGowan, 96 N. Y. 75; Cooper v. Whitney, 3 Hill, 95; Curtis v. Leavitt, 15 N. Y. 9.

[13] Means v. Montgomery, 23 Fed. Rep. 421.

[14] Means v. Montgomery, 23 Fed. Rep. 421; Hempstead v. Johnston, 18 Ark, 123; Brown v. Lyon, 17 Ala. 659; Graham v.

Lockhart, 8 Ala. 9; Hindman v. Dill, 11 Ala. 689; Miller v. Stetson, 32 Ala. 166; Rowland v. Coleman, 45 Ga. 204; Conkling v. Carson, 11 Ill. 503; New Albany R. Co. v. Huff, 19 Ind. 444; McFarland v. Birdsall, 14 Ind. 126; Ely v. Hair, 16 B. Mon. 230; Johnson v. McAllister, 30 Mo. 327; Andrews v. Ludlow, 22 Mass. 28; Richards v. Levin, 16 Mo. 596; Moore v. Collins, 3 Dev. Law, 126; Vaughan v. Evans, 1 Hill, Ch. 414; Beck v. Burdett, 1 Paige, 305; Dickson v. Rawson, 5 Ohio St. 219; Floyd v. Smith, 9 Ohio St. 546; Dana v. Bank of U. S. 5 Watts & S. 223; Dance v. Seaman, 11 Grat. 778.  Contra, Truitt v. Caldwell, 3 Minn. 364; Banning v. Sibley, 3 Minn. 389; Green v. Trieber, 3 Md. 11; Pierson v. Manning, 2 Mich. 445; Maberry v. Shisler, 1 Harr. (Del.) 349; Berry v. Riley, 2 Barb. 307; Barney v. Griffin, 2 N. Y. 365; Goodrich v. Downs, 6 Hill, 438; Lansing v. Woodworth, 1 Sandf. Ch. 43; Strong v. Skinner, 4 Barb. 546; Collomb v. Caldwell, 16 N. Y. 484; Dana v. Lull, 17 Vt. 390; Therasson v. Hickok, 37 Vt. 454.

[15] Dana v. Lull, 17 Vt. 390.

[16] Leitch v. Hollister, 4 N. Y. 211; Dunham v. Whitehead, 21 N. Y. 131; McClelland v. Remsen, 23 How. Pr. 175.

[17] Graham v. Lockhart, 8 Ala. 9; Ely v. Hair, 16 B. Mon. 230; Murray v. Riggs, 15 Johns. 571; Austin v. Bell, 20 Johns. 442;

est in a possible surplus is not an interest in the property assigned, which can be asserted in an action to determine adverse claims.[1] The assignor may make what disposition he pleases of the reserved property.[2] There may be a provision in the assignment that the surplus shall be paid to the debtor or creditors in the discretion of the assignee.[3] Partners in making assignment of firm property to discharge firm debts, may direct the residue to be returned to them, to be divided according to equitable interests of each, leaving each to pay his private debts out of his own-individual property;[4] and such assignment is not fraudulent,[5] as the law itself creates a resulting trust in their favor as to such surplus.[6] Where the assignee includes both individual and partnership property, the surplus cannot be reserved without providing for individual debts;[7] but proof must be given that there are separate debts,[8] and it is void if the surplus is reserved without providing for the separate debts;[9] but where no surplus is expected, the omission to so provide does not affect the transfer;[10] and evidence is admissible to show that there is no surplus after payment of the partnership debts;[11] so where it is shown that the omission was the result of haste or inadvertence.[12] An appropriation without discrimination renders the deed fraudulent; so if it authorizes the property of a solvent debtor to be applied in part to pay the debts of another, for which neither he nor his property is in any way bound, before his own just debts are satisfied.[13] Where it appears that sufficient property was retained by the debtor to pay his other creditors, the conveyance is valid.[14] The state statutes have reference only to assignments for the benefit of all creditors;[15] and a conveyance of all property to trustees to pay a portion of the creditors, the surplus to be returned to the debtor, leaving his other creditors unprovided for, is fraudulent and void as to them;[16] but evidence may be given of no individual debts, and the burden of proof is on the parties claiming under the instrument.[17]

APPLICATION OF PROPERTY. Partnership property may be applied to the payment of debts not partnership debts, but for which all the partners are bound.[18] So money loaned to a stockholder may be shown to have been used for the benefit of the corporation, and is a good consideration for a transfer made by the latter to the creditor.[19] An appropriation of the firm property to pay individual debts is not, it seems, a ground for setting aside the assignment at the instance of an individual creditor, as he cannot in any manner be affected by it.[20] Where separate property assigned by each partner exceeds the amount of his separate debts, a direction that the separate debts shall be paid out of the partnership property will not vitiate the assignment.[21] Debts

Skipwith v. Cunningham, 8 Leigh, 271; Janney v. Barnes, 11 Leigh, 100, Marks v. Hill, 15 Grat. 400.

[1] Donohue v. Ladd, 31 Minn. 244.

[2] Hildebrand v. Bowman, 100 Pa. St. 580.

[3] Kneeland v. Cowles, 4 Chand. 46.

[4] Bogert v. Haight, 9 Paige, 297; Butt v. Peck, 1 Daly, 83; Hubler v. Waterman, 33 Pa. St. 414.  See Goddard v. Hapgood, 25 Vt. 351; Eyre v. Beebe, 28 How. Pr. 333.

[5] Collomb v. Caldwell, 16 N. Y. 484; Collumb v. Read, 24 N. Y. 505.

[6] Bogert v. Haight, 9 Paige, 297.

[7] Collomb v. Caldwell, 16 N. Y. 484.

[8] Bogert v. Haight, 9 Paige, 297.

[9] Goddard v. Hapgood, 25 Vt. 351.

[10] Doremus v. Lewis, 8 Barb. 124; Bishop v. Halsey, 3 Abb. Pr. 400; Spies v. Joel, 1 Duer, 669.

[11] Turner v. Jaycox, 40 N. Y. 470.  Contra, Smith v. Howard, 20 How. Pr. 121.

[12] Hooper v. Tuckerman, 3 Sandf. 311.

[13] Smith v. Howard, 20 How. Pr. 121; O'Neil v. Salmon, 25 How. Pr. 246; Kitchen v. Reinsky, 42 Mo. 427.

[14] Knapp v. McGowan, 96 N. Y. 75.

[15] Knapp v. McGowan, 96 N. Y. 75; Tiemeyer v. Turnquist, 85 N. Y. 522.

[16] Knapp v. McGowan, 96 N. Y. 75.

[17] Hurlbert v. Dean, 2 Keyes, (N. Y.,) 97. Contra, Lester v. Abbott, 28 How. Pr. 488.

[18] Smith v. Howard, 20 How. Pr. 121.

[19] Calkins v. Lockwood, 16 Conn. 276; Gardner v. Webber, 34 Mass. 407; Goddard v. Sawyer, 91 Mass. 78; U. S. v. Hooe, 3 Cranch, 73.

[20] Morrison v. Atwell, 9 Bosw. 503.

[21] Hollister v. Loud, 2 Mich. 309; Van Nest v. Yoe, 1 Sandf. Ch. 4; Knauth v. Bassett, 34 Barb. 31.

provided for in an assignment of the individual property must be those for which the debtor is liable jointly with others, or severally and alone. If he is liable, the appropriation cannot be fraudulent.[1] A direction that property shall be distributed among creditors according to their respective equities is good.[2] After a partnership creditor has exhausted the firm assets he is entitled to come in equally with separate creditors under an assignment by one partner.[3] A provision cannot be made for debts which the separate partners may have against the firm, before the firm creditors are paid;[4] but a note given to a former partner upon his withdrawal, may be provided for.[5] The general rule now is that when all the partners are in bankruptcy the separate estate of one partner shall not claim against the joint estate of the partnership in competition with the joint creditors, nor the joint estate against the separate estate in competition with the separate creditors;[6] but if there is no joint estate, firm creditors have the right to share in the separate estate.[7]

ATTORNEY'S FEES. It is no objection to a conveyance in trust for the benefit of creditors that a provision is made for the payment of a reasonable attorney's fee for examination of facts, advice, or drawing up the assignment; but the debtor cannot contract with attorneys for future services.[8] The reasonable and proper charges incurred by the assignee in the employment of attorneys may be properly embraced in the items of expenses;[9] but the assignment cannot designate the attorney to be employed by the assignee.[10] The payment of attorney's fees is not such a preference as will bar a discharge.[11]—[ED.

[1] Fox v. Heath, 16 Abb. Pr. 163; O'Neil v. Salmon, 25 How. Pr. 246; Eyre v. Beebe, 28 How. Pr. 333; Kirby v. Schoonmaker, 3 Barb. Ch. 46; Van Rossum v. Walker, 11 Barb. 237; Newman v. Bagley, 33 Mass. 570; French v. Lovejoy, 12 N. H. 458; Gadsden v. Carson, 9 Rich. Eq. 252. See Jackson v. Cornell, 1 Sandf. Ch. 348.

[2] Heckman v. Messinger, 49 Pa. St. 465; Maennel v. Murdock, 13 Md. 264.

[3] Gadsden v. Carson, 9 Rich. Eq. 252. See Black's Appeal, 44 Pa. St. 503; Fellows v. Greenleaf, 43 N. H. 421; Pennington v. Bell, 4 Sneed, 200.

[4] Goddard v. Hapgood, 25 Vt. 351.

[5] Mattison v. Demarest, 4 Robt. 161; Blow v. Gage, 44 Ill. 208; Smith v. Howard, 20 How. Pr. 121.

[6] In re Lloyd, 22 Fed. Rep. 90; In re Lane, 10 N. B. R. 135.

[7] In re Lloyd, 22 Fed. Rep. 90.

[8] Hill v. Agnew, 12 Fed. Rep. 230.

[9] Jacobs v. Remsen, 36 N. Y. 668; Butt v. Peck, 1 Daly, 83; Iselin v. Dalrymple, 27 How. Pr. 137; S. C. 2 Robt. 142.

[10] Hill v. Agnew, 12 Fed. Rep. 230. Contra, Baldwin v. Peet, 22 Tex. 708.

[11] In re Boynton, 10 Fed. Rep. 277.